# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3564

_____

Duluth, Missabe & Iron Range   *
Railway Company, Inc.,   *
  *
    Appellee,   *
  *   Appeal from the United States
  v.   *   District Court for the
  *   District of Minnesota.
International Brotherhood of   *
Locomotive Engineers, AFL-CIO   *
000-101   *
  *
    Appellant.   *

_____

Submitted:  June 14, 2001

Filed:  August 30, 2001

_____

Before MURPHY, HEANEY and BEAM, Circuit Judges.

_____

HEANEY, Circuit Judge.


  This case involves a labor dispute between the Duluth, Missabe and Iron Range Railway Company ("DM&IR") and the Brotherhood of Locomotive Engineers ("Union").  The dispute was submitted to Public Law Board No. 5764 ("Board") under the Railway Labor Act (RLA), 45 U.S.C. §§ 151-163, 181-188.  The arbitrator ruled in favor of the Union.  DM&IR then asked the district court to set aside the award on

the ground that it was in excess of the board's jurisdiction.  The district court granted DM&IR's motion.  We reverse and remand to the district court with directions to remand to the Board.

I.  BACKGROUND

DM&IR and the Union are parties to a labor agreement that defines the circumstances in which an engineer becomes eligible  for "road overtime pay."  The current dispute was initiated in 1994 when the Union filed claims with DM&IR on behalf of individual engineers alleging that they were entitled to receiving overtime pay by virtue of Article IV, Section 2(c) of the 1986 National Agreement entered into by the Union and most of the nation's railroads--including DM&IR--in 1986.  DM&IR denied the claims on the grounds that no overtime pay was due under the parties' labor agreements.  It took the position that the national agreement did not intend to modify the rules and parties respecting the computation of overtime that had been in place on DM&IR since 1923.  It asserted that neither the Union nor any individual engineer had submitted a claim disputing DM&IR's practice, or otherwise objected to it from 1986 until 1994, and that it reversed its course in the latter year.  The parties were unable to resolve the dispute and submitted it to arbitration before the Board, a three-person arbitration panel created by the parties under the RLA.  Gil Vernon was the board's neutral member and chairman.  The Board, over the dissent of the DM&IR member, ruled in favor of the Union:

> It is the opinion of the Board that regardless of the past operation of the locally negotiated Rule 7, it was clearly modified by the nationally negotiated Article IV.  The Parties bought into national handling, and they agreed that language agreed to there controlled all related prior agreements.  The relevant portion of the agreement in this regard read as follows:
>
> "APPENDIX "A," 1986 NATIONAL AGREEMENT

"Section "NINETEENTH"

"NINETEENTH: This Agreement (together with Exhibits A, B, C, D, and E affixed hereto) embodies the entire agreement and understanding between the parties and supersedes all prior agreements and understandings relevant to the subject matter hereof. No amendments, waivers, or -modifications [sic] to this Agreement are to be effective unless executed by the parties [sic] duly accredited representatives in a writing referring to this Agreement.

(Appellant's Add. at 3 (emphasis added).) The Board awarded the individual engineers the sum of $73,631.52, concluding DM&IR had breached the 1986 agreement.

The Union now concedes that there is no "Section Nineteenth" in the 1986 agreement, and DM&IR argues that the arbitration award should be set aside for this reason. Nevertheless, in January of 1998, DM&IR and the Union reached an agreement under which DM&IR paid the individual engineers the sum of $73,631.52, but has refused to pay those engineers pursuant to the award for future overtime miles. Instead, it moved to vacate the award on the grounds that the award exceeded the scope of the arbitrator's jurisdiction because its validity depended on the nonexistent Section Nineteenth.

The magistrate to whom the matter was referred agreed that the Vernon Award should be set aside for the reasons advanced by DM&IR:

Indisputably, the Award of PLB 5764 makes clear that, in the view of the neutral Arbitrator, and of the BLE representative, Section NINETEENTH was the applicable provision of the 1986 National Agreement, and its provision dispositively determined that Rule 7 was clearly modified by the nationally negotiated Article IV.
. . .

-3-

The Award's commentary, on the uniform application of a National Agreement, is directly derived from the Board's erroneous belief that the 1986 National Agreement contained a provision--Section NINETEENTH--in which the parties agreed that the language agreed to there controlled all related prior agreements.
. . .

[The Award] is so diminished, by reliance upon a contractual provision which is unquestionably inapposite, [that] the Award may not properly stand.

(Magistrate's Report and Recommendation at 18, 22, 23-24 (internal quotations omitted).)

The district court adopted the magistrate's recommendation and entered judgment vacating and setting aside the arbitration award. This appeal followed.

## II. DISCUSSION

Judicial review of a labor-arbitration decision . . . is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. . . . [T]he fact that "a court is convinced [the arbitrator] committed serious error does not suffice to overturn [the arbitrator's] decision."

Major League Baseball Players Ass'n v. Garvey, 121 S. Ct. 1724, 1728 (2001) (per curiam) (quoting Eastern Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 62 (2000); see Air Line Pilots Ass'n, Int'l v. United Air Lines Corp., 874 F.2d 439, 443 (8th Cir. 1989) (noting "excruciatingly narrow" scope of review). DM&IR argues that the award does not draw its essence from the parties labor agreements because it was based on Section Nineteenth. The Union counters that the arbitrator's decision was not dependent on the nonexistent provision and drew its essence from the agreement and

that the award should be upheld. It also argues that because the settlement agreement between the parties carried out the arbitration award the issue as to whether it should be enforced in the future is moot. We agree with DM&IR that the dispute is not moot – the parties simply agreed to the dollar amount DM&IR had to pay to comply with the Vernon Award and paid that sum. Its compliance, however, did not moot its action contesting the future application of the award. See Tungseth v. Mutual of Omaha Ins. Co., 43 F.3d 406, 409 (8th Cir. 1994).

It is quite clear that DM&IR benefitted from the 1986 National Agreement, as the wage rates for its employees were reduced. On the other hand, the Union gained by the new overtime system prescribed in the 1986 National Agreement. Moreover, when we read the arbitration agreement in its entirety, we are unable to discern whether the arbitrator would have reached the same result had he not erroneously concluded that Section Nineteenth was a part of the 1986 National Agreement. That task must be left to the arbitrator.

III. CONCLUSION

We remand the matter to the district court with directions to it to remand the case for further arbitration proceedings without reference to Section Nineteenth. See 45 U.S.C. § 153(q); Major League Baseball Players Ass'n, 121 S. Ct. at 1728; Union Pac. R.R. Co. v. United Transp. Union, 3 F.3d 255, 263 (8th Cir. 1993); United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987); American Fed'n Of State, County & Mun. Employees, Local Lodge No. 1803 v. Walker County Med. Ctr., 715 F.2d 1517, 1519 (11th Cir. 1983) (per curiam).

BEAM, Circuit Judge, dissenting.


Let me begin with the lesser of two concerns–what I consider to be the proper outcome of this appeal. The question before us is whether the arbitrator confined himself to matters within his jurisdiction. 45 U.S.C. § 153, First (q). The arbitrator had jurisdiction only to consider the parties' agreement, and was charged with issuing a decision drawing its essence therefrom. Walsh v. Union Pac. R.R. Co., 803 F.2d 412, 414-15 (8th Cir. 1986); Brotherhood of Ry, Airline and Steamship Clerks v. Kansas City Terminal Ry. Co., 587 F.2d 903, 906-07 (8th Cir. 1978). It seems to me that a decision turning largely on a phantom provision, not actually within the parties' agreement, can hardly be said to have hewed to the specifications of the contract. The district court was justified in vacating the award.


Given that the arbitrator exceeded his jurisdiction, the RLA gives us discretion as to the proper course of action. 45 U.S.C. § 153, First (q) (reviewing court has "jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct"). The court cites authorities supporting the proposition that in the rare case warranting reversal a remand might be appropriate, and chooses to do so in this instance. See, e.g., Union Pacific R.R. Co. v. United Transp. Union, 3 F.3d 255, 264 (8th Cir. 1993). The equities, however, weigh heavily against the Union, for it was the Union which introduced the phantom provision and which cited it several times in its written submission to the arbitrator. The district court determined the evidence did not support a finding of fraud, a finding I respect. But the Union's mistake, even if honest, ought to run against it. It should not be given a second bite at the proverbial apple.


The above, however, is but a quibble with the court over the proper disposition of the equities of this matter, something which ought not cause arbitration-law

specialists much loss of sleep. The court's opinion, however, innocuous as it seems, actually contains a much more worrisome problem. Specifically, the court fails to decide that which it is charged with deciding. The only basis for reversal implicated in this appeal is whether the arbitrator exceeded his jurisdiction. Rather than answer that question, the court simply ducks the issue, remanding the dispute on the grounds that the court is "unable to discern whether the arbitrator would have reached the same result" had he not relied on the phantom provision. However, we are not asked to discern what the arbitrator might have done under a different set of circumstances, but rather what the arbitrator did do under the facts presented.

I am uncertain as to where the court draws its authority to order a remand in the face of its stated uncertainty. Certainly it does not do so from the RLA. That statute does permit remands, granting courts "jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or . . . remand the proceeding to the division for such further action as it may direct." 45 U.S.C. § 153, First (q). However, the statute then cabins that grant with the following language:

> On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153, First (q). Thus, a remand may occur only after a court has "set aside, in whole or in part," the arbitrator's decision, which in turn may occur only upon the statutory bases or upon such other bases as we have judicially created. See, e.g., Union Pacific R.R., 3 F.3d at 261-62 (setting award aside on basis of "well-defined and

dominant" public policy). Here, the court punts the predicate question, whether the arbitrator's award exceeded its jurisdiction, and reverses the district court's conclusion to that effect. Having done so, the court lacks authority to remand under the RLA.

My major concern with the court's course of action is that, despite using citations to language limiting our review, in the hands of future litigators the court's decision may prove a precedential crowbar used to pry open judicial review of RLA awards. By declining to determine whether or not the arbitrator exceeded its jurisdiction, the court creates a third way for us to review arbitration rulings. In future cases we may simply recite the Supreme Court's directives narrowing our review, but then send back arbitration decisions with which we disagree, on the grounds that we don't understand what the arbitrator did, in order to give them another chance to "get it right." If the court had vacated the arbitrator's decision, as I think it should, then my disagreement with the court would simply be a dispute over the equities of the remand, a substantially less worrisome debate. As the opinion stands, however, I think it an imprudent and dangerous precedent.

Accordingly, I dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.