# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3581

_____

| | | |
|---|---|---|
| Brotherhood of Maintenance of Way Employees; Chicago, Milwaukee, St. Paul and Pacific System Federation, BMWE, | * * * * | |
| | * | Appeal from the United States |
| Appellees, | * | District Court for the |
| | * | District of Minnesota. |
| v. | * | |
| | * | |
| Soo Line Railroad Company, a | * | |
| Minnesota corporation doing business | * | |
| as Canadian Pacific Railroad Company, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 14, 2001

Filed: September 24, 2001

_____

Before WOLLMAN, Chief Judge, MAGILL, and HAMILTON,[1] Circuit Judges.

_____

WOLLMAN, Chief Judge.

_____

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the Fourth Circuit, sitting by designation.

Soo Line Railroad Company (Soo Line) appeals from the district court's order vacating in part an arbitration award entered by National Railroad Adjustment Board (Board). We reverse.

## I.

Soo Line operates a rail system under the Interstate Commerce Act and constitutes a "carrier" within the meaning of § 1 of the Railway Labor Act, 45 U.S.C. § 151 First. Its track workers are represented by the Brotherhood of Maintenance of Way Employees (BMWE or union). As the result of a 1985 merger between Soo Line and the Milwaukee Railroad, relations between Soo Line and BMWE are governed by one of two collective bargaining agreements. Union members working at properties originally owned by Soo Line work under the "Soo-side" agreement and employees at former Milwaukee Railroad properties work under the "Milwaukee-side" agreement. The parties stipulate that this dispute is governed by the Milwaukee-side agreement.

In February of 1993, Soo Line assigned certain painting projects at its St. Paul Roundhouse to members of the Brotherhood of Railway Carmen. On March 16, 1993, BMWE filed a claim with Soo Line (original claim), asserting that pursuant to the Milwaukee-side agreement the painting work should have been assigned to BMWE employees and claiming compensation for 96 straight time and 202 overtime hours. On March 20, 1993, BMWE filed a supplemental claim with Soo Line, claiming that BMWE workers were entitled to compensation for an additional 92 straight time and 96 overtime hours of painting work. Soo Line denied both the original and the supplemental claims on May 24, 1993.

The dispute was then submitted for arbitration before the National Railroad Adjustment Board (Board). In Award No. 32422, dated January 21, 1998, the Board ruled that Soo Line was procedurally barred from disputing the union's original claim

-2-

because it had failed to contest it within sixty days as required by the Milwaukee-side agreement. The Board accordingly ordered Soo Line to compensate the union for the hours specified in the original claim. The Board addressed the merits of the supplemental claim, however, and determined, in relevant part, (1) that the so-called "Scope Rule" in the Milwaukee-side agreement did not explicitly limit painting to BMWE members; (2) that the union therefore bore the burden of demonstrating that painting at the St. Paul Roundhouse was historically performed by BMWE members; and (3) that the union failed to satisfy this burden. The Board therefore rejected the supplemental claim for compensation.

BMWE subsequently filed a petition in federal district court, challenging the Board's arbitration award to the extent that it rejected the union's supplemental claim. Although the court acknowledged that it owed the Board's decision extraordinary deference, it concluded that the Board had exceeded its jurisdiction by citing "industry practice, custom, and usage involving the Soo-side Agreement" and failing "to draw its essence" from the Milwaukee-side agreement. The court accordingly vacated the relevant portion of the award and remanded for further findings by the Board regarding the past practice of the parties under the Milwaukee-side agreement.

## II.

We review the court's findings of law de novo and its factual findings on a clearly erroneous standard. Excel Corp. v. United Food & Commer. Workers Int'l Union, 102 F.3d 1464, 1467 (8th Cir. 1996). We therefore owe no special deference to the district court's decision to vacate the Board's award. Bureau of Engraving v. Graphic Comm. Int'l Union, 164 F.3d 427, 429 (8th Cir. 1999).

The Supreme Court has recently reminded us once again about the narrow scope of judicial review of a labor-arbitration decision: "Judicial review of a labor-arbitration decision . . . is very limited. Courts are not authorized to review the

arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Ass'n v. Garvey, 121 S. Ct. 1724, 1728 (2001). See also Duluth, Missabe & Iron Range Ry. Co., Inc., v. Int'l Bhd. of Locomotive Eng'rs, No. 00-3564, 2001 WL 987559 (8th Cir. August 30, 2001).

Our review of the Board's decision is "among the narrowest known to the law." Int'l Ass'n of Machinists and Aerospace Workers v. Northwest Airlines, (Aerospace Workers), 858 F.2d 427, 429 (8th Cir. 1988). An arbitration award may be set aside on three grounds only: (1) the Board's failure to comply with the provisions of the Railway Labor Act; (2) failure of the order to confine itself to matters within the scope of its jurisdiction; or (3) fraud or corruption. See id.; 45 U.S.C. § 153 First (q). An arbitrator's task is to interpret and apply the relevant collective bargaining agreement. Alvey, Inc. v. Teamsters Local Union No. 688, 132 F.3d 1209, 1213 (8th Cir. 1997). As long as the arbitrator is arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. Keebler Co. v. Milk Drivers and Dairy Emp. Union, 80 F.3d 284, 287 (8th Cir. 1996) (citation omitted). Furthermore, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960). Stated otherwise, as long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely a brand of industrial justice, the award is legitimate. United Paperworkers Int'l v. MISCO, Inc., 484 U.S. 29, 38 (1987) (citation omitted).

Although the parties agree that the Milwaukee-side agreement controls this case, the Board's award cited two prior awards that involved the application and interpretation of the Soo-side collective bargaining agreement. The relevant portion of the Board's decision reads:

The Organization [BMWE] has not carried its burden on the supplemented allegations found in the March 30, 1993 letter. The Scope Rule does not reserve painting work exclusively to the Organizations's members and the record does not establish that the Organization's members have historically performed this type of work. See Third Division Award 27880 between the parties ("Without an express reservation of work guaranteed to them by contract, the Organization was obligated to show that its members have historically performed the work"). On the contrary, the Carrier has shown that its Carmen have performed similar painting. Third Division Award 27762 between the parties and Awards cited therein (Carmen painting portions of buildings at different locations).

It is well established that an arbitrator may look to outside sources to aid in interpreting a collective bargaining agreement, Alvey, 132 F.3d at 1213. Accordingly, the Board's citation of these awards is not, in itself, problematic. The question, rather, is whether the citation of these two awards indicates that Board's decision improperly draws its essence from the Soo-side collective bargaining agreement. Id. When viewed in the light of our deferential standard of review, we conclude that it does not.

We turn first to Award 27880, which the Board cited solely for the proposition that the union bore the burden of establishing the prior practice of the parties at the St. Paul Roundhouse. Although Award 27880 involved application of the Soo-side agreement, we conclude that the citation of the award for this limited purpose does not indicate that the Board's award draws its essence from an inapplicable collective bargaining agreement. BMWE does not argue that the burden of proof was improperly applied by the Board, nor does the union contend that the Milwaukee-side agreement mandates the application of a different burden of proof rule. Furthermore, we observe that "[u]nless there is specific controlling language in the collective bargaining agreement . . . an arbitrator's decision allocating the burden of proof among the parties . . . ordinarily cannot be reviewed in federal court." Alvey, 132 F.3d at

1212.  Accordingly, we conclude that the citation of Award 27880 does not implicate jurisdictional issues.

We next address the Board's citation of Award 27762, keeping in mind that "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."  United Steelworkers, 363 U.S. at 598.  The Board cited Award 27762 for the proposition that "the Carrier has shown that its Carmen have performed similar painting," and identified the award as being "between the parties."  BMWE argues that Award 27762 was not "between the parties" because it involved a distinct bargaining unit under the Soo-side agreement, rather than the bargaining unit governed by the Milwaukee-side agreement.  Further, BMWE argues that the Board's determination that the union failed to carry its burden with regard to the historical practice at the St. Paul Roundhouse was based on its erroneous belief that Award 27762 demonstrated that Carmen had routinely done painting work under the Milwaukee-side agreement.  We disagree.

Even assuming, arguendo, that the Board erred  in characterizing Award 27762 as "between the parties" and erroneously believed that the award involved the Milwaukee-side agreement, it is unclear whether these errors affected the Board's antecedent conclusion that "the record does not establish that the Organization's members have historically performed this type of [painting] work."  To the contrary, the specificity of this statement indicates that the Board thoroughly examined the record and concluded that BMWE had failed to satisfy its burden of proof regarding the historical practice of the parties under the Milwaukee-side agreement.  Furthermore, in light of its conclusion that the record did not support the union's claim that painting work was traditionally limited to its members, and in light of the undisputed fact that the Milwaukee-side agreement did not specifically limit painting to BMWE members, the Board was permitted to "consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such

-6-

agreements." Transportation-Communication Employees Union v. Union Pac. R.R. Co., 385 U.S. 157, 161 (1966). "This is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments." Id.

In sum, although it is possible that the Board relied on an inapplicable collective bargaining agreement, to find that it did so would require speculation on our part. It is, at the very least, equally likely that the Board reviewed the record and concluded that the union failed to satisfy its burden of proof, and that this decision was unaffected by any alleged errors related to its interpretation of Award 27762. Where such ambiguity exists, we are obligated to grant the Board's decision the benefit of the doubt and conclude that jurisdiction was properly exercised. Steelworkers, 363 U.S. at 598.

BMWE contends that it conclusively demonstrated that painting work was traditionally reserved to BMWE members under the Milwaukee-side agreement and that the Board therefore erred when it concluded that it had failed to satisfy its burden of proof. These arguments fundamentally misapprehend the scope of our inquiry, however, for our task on appeal is decidedly not to review the merits of the Board's award. Aerospace Workers, 858 F.2d at 430. Even if we were convinced that the Board committed serious error in its analysis of the historical practice of the parties with regard to the assignment of painting work, we would not be justified in overturning its decision. United Paperworkers, 484 U.S. at 38.

Finally, the cases cited by BMWE in support of the district court's decision to vacate the Board's award are distinguishable. In Keebler, 80 F.3d at 288-89, we vacated an arbitrator's award because the arbitrator expressly relied on language that had been deliberately rejected by the parties during contract negotiations. In this case, it is undisputed that the Milwaukee-side agreement does not explicitly limit painting to BMWE members, and thus the Board's decision does not directly conflict with the

controlling collective bargaining agreement. Similarly, in <u>Alvey</u>, 132 F.3d at 1213, we reversed the district court's decision to enforce an arbitrator's award because the record reflected that the arbitrator "effectively wrote a relevant work rule out of the agreement by looking exclusively at an inconclusive outside source." No such error occurred here. Finally, the union relies on <u>Bureau of Engraving</u>, 164 F.3d at 429 (8th Cir. 1999), in which we ordered the district court to vacate an award because the arbitrator had failed to consider the intent of the parties in its analysis. Here, the Board award indicates that it thoroughly reviewed the evidence of past practice and concluded that the union had failed to meet its burden of proof. Although the parties disagree about the merits of the Board's decision, that issue is beyond the scope of our review.

The judgment is reversed, and the case is remanded to the district court with directions to reinstate the Board's award and to dismiss the petition.

HAMILTON, Circuit Judge, dissenting:

Because I believe the Board's decision did not draw its essence from the Milwaukee-side Agreement, I respectfully dissent from the majority's decision to reverse the district court's judgment.

Reduced to its essence, the majority's decision in this case is premised on the notion that it is "unclear" whether the Board's reliance on Award 27762 "affected the Board's antecedent conclusion that 'the record does not establish that the Organization's members have historically performed this type of [painting] work.'" <u>Ante</u> at 6. According to the majority, the record's lack of clarity on this point "require[s] speculation on our part" to conclude that the "Board relied on an inapplicable collective bargaining agreement." Ante at 7. Because speculation on our part is required to conclude that the Board was in error, the majority opines that "we are obligated to grant the Board's decision the benefit of the doubt." <u>Id.</u> In my view, the record is not ambiguous: the Board's decision drew its essence from an

inapplicable collective bargaining agreement, the Soo-side Agreement. And for this simple reason, the Board's decision cannot stand.

I

The majority correctly observes that the only claim at issue is the BMWE's supplemental claim. With respect to the supplemental claim, the BMWE submitted evidence of past practice in the form of prior letters of understanding with the Milwaukee Railroad (and its predecessors) and Board awards recognizing that the BMWE had the exclusive right to perform painting work on railroad structures. The BMWE provided documentation as far back as 1945 as to this exclusive right, wherein the organization successfully asserted its right to painting work whenever the railroad attempted to have other crafts perform it. Indeed, the BMWE submitted six prior arbitration awards rendered under the Milwaukee-side Agreement (Awards 7303, 8508, 18852, 18950, 19034 and 19152). The six awards submitted by BMWE involved disputes that occurred between 1952 and 1972. The first award, Award 7303, involved a dispute concerning the painting of both road signs and switch targets between Green Bay and Cravitz, Wisconsin. The Board held that this work was within the exclusive province of the BMWE.

In 1958, the BMWE filed another grievance, this time challenging painting being done by a shop craft. In that case, the Milwaukee Railroad attempted to defend on the ground that a low-level railroad official acted outside his authority by having other crafts do the painting since the railroad warned the involved official that all painting was exclusively for the BMWE members. The Board (Award 8508) rejected that ultra vires defense, holding that the railroad, being aware of that exclusive practice, had a duty to police the agreement.

In 1971, the BMWE again successfully enforced its right to painting work (Award 18852). The subject came up again on three occasions in 1972. In the first case, in January 1972, the Board (Award 18950) held:

-9-

Moreover, the record persuades us that painting of Carrier's structures on the System belongs to employees in the [BMWE] and that when such work has been performed by other crafts, as in the instant dispute, protests and claims have been filed and Carrier has in the past acknowledged the validity of such remonstrances and contentions.

Another successful award (Award 19034) followed in February 1972. In April 1972, in a similar dispute, the Board (Award 19152) held:

Concerning the merits of this dispute, the Organization has referred us to Award No. 8508 and more recent Award Nos. 18852, 18950 and 19034 of this Board involving the same issue and the same parties to this dispute, and under the principle of "stare decisis," we find that the issue before us has already been decided and thus Carrier violated the Agreement in this instance when it permitted Locomotive Department Employees rather than [BMWE] painters to paint the floor of the Electrical Shop Building at Milwaukee during July, 1965.

Prior to the 1985 merger between the Soo Line Railroad and the Milwaukee Railroad, the Soo Line Railroad had a long history of practice whereby shops, such as carmen, regularly performed painting work. For example, in 1983, the Soo Line branch of the BMWE attempted to challenge this practice, admitting the non-exclusive history of past practice which allowed carmen to perform painting of many structures under the Soo-side Agreement, but trying to argue the Soo-side Agreement rules on painting were clearly established, so as to supercede past practice. In that case, the Board (Award 27179) rejected that attempt and denied the claim consistent with past practice under the Soo-side Agreement.

The Soo Line branch of the BMWE made another attempt in 1989 to challenge the established non-exclusive practice on painting, and the Board rejected this

challenge. The Board (Award 27762) rejected this challenge on the basis of the clear record of non-exclusive practice at various locations under the Soo-side Agreement.

In the case presently before the court, the Board first determined that the Soo Line Railroad had timely disputed the BMWE's supplemental claim. Next, on the merits, the Board concluded:

> The Organization [BMWE] has not carried its burden on the supplemented allegations found in the March 30, 1993 letter. The Scope Rule does not reserve painting work exclusively to the Organization's members and the record does not establish that the Organization's members have historically performed this type of work. See Third Division Award 27880 between the parties ("Without an express reservation of work guaranteed to them by contract, the Organization was obligated to show that its members have historically performed the work"). On the contrary, the Carrier has shown that its Carmen have performed similar painting. Third Division Award 27762 between the parties and Awards cited therein (Carmen painting portions of buildings at different locations).

There is no dispute that Awards 27880 and 27762 were adjudicated under the Soo-side Agreement.

## II

Our review of the Board's decision is narrow. The Supreme Court has cautioned that "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Player's Ass'n v. Garvey, 121 S. Ct. 1724, 1728 (2001). If the Board's decision is even arguably construing or applying the Milwaukee-side Agreement, the fact that I am convinced the Board committed serious error does not provide a basis to disturb the Board's decision. Id.

-11-

Consequently, it is only when the Board's decision "strays from interpretation and application of the agreement" that review is permissible. Id. In other words, as long as the Board's decision draws its essence from the Milwaukee-side Agreement, the Board's decision cannot be reviewed by this court. United Paperworkers Int'l v. MISCO, Inc., 484 U.S. 29, 38 (1987).

Under these principles, I agree with the majority that the legal question at issue can be succinctly summarized as follows: did the Board's conclusion--that "'the record does not establish that the Organization's members have historically performed this type of [painting] work'"--improperly draw its essence from the Soo-side Agreement. Ante at 5. Unlike the majority, I believe the answer to this question is in the affirmative. A careful review of the record explains why.

The relevant portion of the Board's decision contains two sentences, each supported by a citation. The first reads, "The Scope Rule does not reserve painting work exclusively to the Organization's members and the record does not establish that the Organization's members have historically performed this type of work." This sentence is followed by the following citation, "See Third Division Award 27880 between the parties ('Without an express reservation of work guaranteed to them by contract, the Organization was obligated to show that its members have historically performed the work')." The second sentence, which follows the first, reads, "On the contrary, the Carrier has shown that its Carmen have performed similar painting." This sentence is followed by the following citation, "Third Division Award 27762 between the parties and Awards cited therein (Carmen painting portions of buildings at different locations)."

The two sentences, read together, can only mean one thing: the Board concluded that the BMWE did not establish a historical practice of painting exclusivity because the Soo Line Railroad demonstrated that its carmen have performed similar painting in the past. Unfortunately for the Soo Line Railroad, the record is devoid of

evidence demonstrating that historically carmen performed painting work under the Milwaukee-side Agreement; rather, the record reflects that historically carmen performed painting work only under the Soo-side Agreement. Accordingly, the two penultimate sentences of the Board's decision draw their essence not from the Milwaukee-side Agreement, but rather from the Soo-side Agreement.

What makes the majority's position more tenuous is the two citations cited by the Board to support its decision, both of which admittedly were rendered under the Soo-side Agreement. The Board's citation to Award 27880 is problematic for the simple reason that the Board mistakenly believed that it was "between the parties" before the Board, when all parties concede it was not. The Board's mistaken belief carries critical consequences for the BMWE. It essentially gave the Board a license to ignore the evidence produced by the BMWE in the form of prior letters of understanding with the Milwaukee Railroad (and its predecessors) and Board awards recognizing that under the Milwaukee-side Agreement the BMWE had the exclusive right to perform painting work on railroad structures. Had the Board been aware that the Soo-side Agreement awards involved different parties, undoubtedly the Board would have paid some lip service to the overwhelming evidence demonstrating that the BMWE had the exclusive right to perform painting work on railroad structures under the Milwaukee-side Agreement.

The Board's citation to Award 27762 is even more problematic for the majority's position. Like the Board's citation to Award 27880, the Board's citation to Award 27762 carries the "between the parties" plague. However, the citation to Award 27762 is the evidentiary support for the Board's conclusion that carmen have performed painting work under the Milwaukee-side Agreement. Not only does the Board rely on Award 27762 for this proposition, but the Board also relies on the awards cited in Award 27762. Like Award 27762, the awards cited in Award 27762 have nothing to do with painting work performed by carmen under the Milwaukee-side Agreement. The first award cited, Award 27179, is under the Soo-side Agreement; in

that case, the carrier assigned car department employees instead of BMWE forces to paint the roundhouse at North Fond du Lac, Wisconsin. In the second award cited, Award 27759, again under the Soo-side Agreement, the carrier assigned car department instead of BMWE forces to paint the car repair shop at Stevens Point, Wisconsin.

It simply cannot be gainsaid that these awards provide no evidentiary support for the conclusion that carmen have performed painting work under the Milwaukee-side Agreement. But more importantly, the Board's citation to these awards provides no basis to conclude that the Board's decision drew its essence from the Milwaukee-side Agreement.

### III

For the reasons expressed above, there is no need to speculate to reach the conclusion that the Board's decision "relied upon an inapplicable collective bargaining agreement." Ante at 7. Unquestionably, it did. Accordingly, because I would affirm the district court's decision remanding the case to the Board for further proceedings concerning the Milwaukee-side Agreement, cf. Duluth, Missabe & Iron Range Ry. Co., Inc. v. Int'l Bhd. of Locomotive Eng'rs, No. 00-3564, 2001 WL 987559, at *2-3 (8th Cir. August 31, 2001) (remanding case to arbitrator where arbitrator's decision turned largely on provision not contained in the parties' agreement and court could not "discern whether the arbitrator would have reached the same result had he not erroneously concluded" that the phantom provision was a part of the parties' agreement), I dissent.

-14-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.