HAMILTON, Circuit Judge,
dissenting.
Because I believe the Board’s decision did not draw its essence from the Milwaukee-side Agreement, I respectfully dissent from the majority’s decision to reverse the district court’s judgment.
Reduced to its essence, the majority’s decision in this case is premised on the notion that it is “unclear” whether the Board’s reliance on Award 27762 “affected the Board’s antecedent conclusion that ‘the record does not establish that the Organization’s members have historically performed this type of [painting] work.’ ” Ante at 911. According to the majority, the record’s lack of clarity on this point “require[s] speculation on our part” to conclude that the “Board relied on an inapplicable collective bargaining agreement.” Ante at 912. Because speculation on our part is required to conclude that the Board was in error, the majority opines that “we are obligated to grant the Board’s decision the benefit of the doubt.” Id. In my view, the record is not ambiguous: the Board’s decision drew its essence from an inapplicable collective bargaining agreement, the Soo-side Agreement. And for this simple reason, the Board’s decision cannot stand.
I
The majority correctly observes that the only claim at issue is the BMWE’s supplemental claim. With respect to the supplemental claim, the BMWE submitted evidence of past practice in the form of prior letters of understanding with the Milwaukee Railroad (and its predecessors) and Board awards recognizing that the BMWE had the exclusive right to perform painting work on railroad structures. The BMWE provided documentation as far back as 1945 as to this exclusive right, wherein the organization successfully asserted its right to painting work whenever the railroad attempted to have other crafts perform it. Indeed, the BMWE submitted six prior arbitration awards rendered under the *913 Milwaukee-side Agreement (Awards 7303, 8508, 18852, 18950, 19034 and 19152). The six awards submitted by BMWE involved disputes that occurred between 1952 and 1972. The first award, Award 7303, involved a dispute concerning the painting of both road signs and switch targets between Green Bay and Cravitz, Wisconsin. The Board held that this work was within the exclusive province of the BMWE.
In 1958, the BMWE filed another grievance, this time challenging painting being done by a shop craft. In that case, the Milwaukee Railroad attempted to defend on the ground that a low-level railroad official acted outside his authority by having other crafts do the painting since the railroad warned the involved official that all painting was exclusively for the BMWE members. The Board (Award 8508) rejected that ultra vires defense, holding that the railroad, being aware of the exclusive practice, had a duty to police the agreement.
In 1971, the BMWE again successfully enforced its right to painting work (Award 18852). The subject came up again on three occasions in 1972. In the first case, in January 1972, the Board (Award 18950) held:
Moreover, the record persuades us that painting of Carrier’s structures on the System belongs to employees in the [BMWE] and that when such work has been performed by other crafts, as in the instant dispute, protests and claims have been filed and Carrier has in the past acknowledged the validity of such remonstrances and contentions.
Another successful award (Award 19034) followed in February 1972. In April 1972, in a similar dispute, the Board (Award 19152) held:
Concerning the merits of this dispute, the Organization has referred us to Award No. 8508 and more recent Award Nos. 18852, 18950 and 19034 of this Board involving the same issue and the same parties to this dispute, and under the principle of “stare decisis,” we find that the issue before us has already been decided and thus Carrier violated the Agreement in this instance when it permitted Locomotive Department Employees rather than [BMWE] painters to paint the floor of the Electrical Shop Building at Milwaukee during July, 1965.
Prior to the 1985 merger between the Soo Line Railroad and the Milwaukee Railroad, the Soo Line Railroad had a long history of practice whereby shops, such as carmen, regularly performed painting work. For example, in 1983, the Soo Line branch of the BMWE attempted to challenge this practice, admitting the non-exclusive history of past practice which allowed carmen to perform painting of many structures under the Soo-side Agreement, but trying to argue the Soo-side Agreement rules on painting were clearly established, so as to supercede past practice. In that case, the Board (Award 27179) rejected that attempt and denied the claim consistent with past practice under the Soo-side Agreement.
The Soo Line branch of the BMWE made another attempt in 1989 to challenge the established non-exclusive practice on painting, and the Board rejected this challenge. The Board (Award 27762) rejected this challenge on the basis of the clear record of non-exclusive practice at various locations under the Soo-side Agreement.
In the case presently before the court, the Board first determined that the Soo Line Railroad had timely disputed the BMWE’s supplemental claim. Next, on the merits, the Board concluded:
The Organization [BMWE] has not carried its burden on the supplemented al *914 legations found in the March 30, 1993 letter. The Scope Rule does not reserve painting work exclusively to the Organization’s members and the record does not establish that the Organization’s members have historically performed this type of work. See Third Division Award 27880 between the parties (“Without an express reservation of work guaranteed to them by contract, the Organization was obligated to show that its members have historically performed the work”). On the contrary, the Carrier has shown that its Carmen have performed similar painting. Third Division Award 27762 between the parties and awards cited therein (Carmen painting portions of buildings at different locations).
There is no dispute that Awards 27880 and 27762 were adjudicated under the Soo-side Agreement.
II
Our review of the Board’s decision is narrow. The Supreme Court has cautioned that “[cjourts are not authorized to review the arbitrator’s decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties’ agreement.” Major League Baseball Player’s Ass’n v. Garvey, 532 U.S. 504, 121 S.Ct. 1724, 1728, 149 L.Ed.2d 740 (2001). If the Board’s decision is even arguably construing or applying the Milwaukee-side Agreement, the fact that I am convinced the Board committed serious error does not provide a basis to disturb the Board’s decision. Id. Consequently, it is only when the Board’s decision “strays from interpretation and application of the agreement” that review is permissible. Id. In other words, as long as the Board’s decision draws its essence from the Milwaukee-side Agreement, the Board’s decision cannot be reviewed by this court. United Paperworkers Int’l v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).
Under these principles, I agree with the majority that the legal question at issue can be succinctly summarized as follows: did the Board’s conclusion — that “ ‘the record does not establish that the Organization’s members have historically performed this type of [painting] work’ ” — improperly draw its essence from the Soo-side Agreement. Ante at 911. Unlike the majority, I believe the answer to this question is in the affirmative. A careful review of the record explains why.
The relevant portion of the Board’s decision contains two sentences, each supported by a citation. The first reads, “The Scope Rule does not reserve painting work exclusively to the Organization’s members and the record does not establish that the Organization’s members have historically performed this type of work.” This sentence is followed by the following citation, “See Third Division Award 27880 between the parties (“Without an express reservation of work guaranteed to them by contract, the Organization was obligated to show that its members have historically performed the work’).” The second sentence, which follows the first, reads, “On the contrary, the Carrier has shown that its Carmen have performed similar painting.” This sentence is followed by the following citation, “Third Division Award 27762 between the parties and Awards cited therein (Carmen painting portions of buildings at different locations).”
The two sentences, read together, can only mean one thing: the Board concluded that the BMWE did not establish a historical practice of painting exclusivity because the Soo Line Railroad demonstrated that its carmen have performed similar painting in the past. Unfortunately for the Soo Line Railroad, the record is devoid of evi *915 dence demonstrating that historically car-men performed painting work under the Milwaukee-side Agreement; rather, the record reflects that historically carmen performed painting work only under the Soo-side Agreement. Accordingly, the two penultimate sentences of the Board’s decision draw their essence not from the Milwaukee-side Agreement, but rather from the Soo-side Agreement.
What makes the majority’s position more tenuous is the two citations cited by the Board to support its decision, both of which admittedly were rendered under the Soo-side Agreement. The Board’s citation to Award 27880 is problematic for the simple reason that the Board mistakenly believed that it was “between the parties” before the Board, when all parties concede it was not. The Board’s mistaken belief carries critical consequences for the BMWE. It essentially gave the Board a license to ignore the evidence produced by the BMWE in the form of prior letters of understanding with the Milwaukee Railroad (and its predecessors) and Board awards recognizing that under the Milwaukee-side Agreement the BMWE had the exclusive right to perform painting work on railroad structures. Had the Board been aware that the Soo-side agreement awards involved different parties, undoubtedly the Board would have paid some lip service to the overwhelming evidence demonstrating that the BMWE had the exclusive right to perform painting work on railroad structures under the Milwaukee-side Agreement.
The Board’s citation to Award 27762 is even more problematic for the majority’s position. Like the Board’s citation to Award 27880, the Board’s citation to Award 27762 carries the “between the parties” plague. However, the citation to Award 27762 is the evidentiary support for the Board’s conclusion that carmen have performed painting work under the Milwaukee-side Agreement. Not only does the Board rely on Award 27762 for this proposition, but the Board also relies on the awards cited in Award 27762. Like Award 27762, the awards cited in Award 27762 have nothing to do with painting work performed by carmen under the Milwaukee-side Agreement. The first award cited, Award 27179, is under the Soo-side Agreement; in that case, the carrier assigned car' department employees instead of BMWE forces to paint the roundhouse at North Fond du Lac, Wisconsin. In the second award cited, Award 27759, again under the Soo-side Agreement, the carrier assigned car department instead of BMWE forces to paint the car repair shop at Stevens Point, Wisconsin.
It simply cannot be gainsaid that these awards provide no evidentiary support for the conclusion that carmen have performed painting work under the Milwaukee-side Agreement. But more importantly, the Board’s citation to these awards provides no basis to conclude that the Board’s decision drew its essence from the Milwaukee-side Agreement.
Ill
For the reasons expressed above, there is no need to speculate to reach the conclusion that the Board’s decision “relied upon an inapplicable collective bargaining agreement.” Ante at 915. Unquestionably, it did. Accordingly, because I would affirm the district court’s decision remanding the case to the Board for further proceedings concerning the Milwaukee-side Agreement, cf. Duluth, Missabe & Iron Range Ry. Co., Inc. v. Int’l Bhd. of Locomotive Eng’rs, 264 F.3d 782, 785 (8th Cir.2001) (remanding case to arbitrator where arbitrator’s decision turned largely on provision not contained in the parties’ agreement and court could not “discern whether *916 the arbitrator would have reached the same result had he not erroneously concluded” that the phantom provision was a part of the parties’ agreement), I dissent.