# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1174

_____

| | | |
|---|---|---|
| Finley Lines Joint Protective Board | * | |
| Unit 200, Brotherhood of Railway | * | |
| Carmen Division, Transportation | * | |
| Communications International Union, | * | |
| | * | Appeal from the United States |
| Plaintiff - Appellee, | * | District Court for the |
| | * | Eastern District of Missouri. |
| v. | * | |
| | * | |
| Norfolk Southern Railway Company, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 13, 2002

Filed: December 13, 2002
_____

Before LOKEN, RILEY, and SMITH, Circuit Judges.
_____

LOKEN, Circuit Judge.

Finley Lines Joint Protective Board Unit 200 ("the Union") is a general committee of the Brotherhood of Railway Carmen, a division of the Transportation Communications International Union. In January 1996, Norfolk Southern Railway Company ("Norfolk Southern") fired Union member Audie Trexler after a Norfolk Southern hearing officer found that Trexler had given false deposition testimony in a lawsuit brought by another Union member against Norfolk Southern. The Union

and Norfolk Southern are parties to a collective bargaining agreement governed by the Railway Labor Act, 45 U.S.C. §§ 151-188. In that Act, Congress has chosen arbitration under the auspices of the National Railroad Adjustment Board as the preferred method of resolving "minor" labor disputes. See 45 U.S.C. § 153 First. Thus, the Union appealed Norfolk Southern's decision to terminate Trexler to Public Law Board 5910 (the "Board"), a three-member public law board established by the parties to make "final and binding" awards resolving disputes over the interpretation and application of the collective bargaining agreement. See 45 U.S.C. § 153 Second.

After written submissions and oral argument by Norfolk Southern and the Union, a divided Board ruled in favor of Norfolk Southern, finding that Trexler had testified falsely. The Board concluded that this constituted conduct unbecoming an employee, which warranted discharge-for-cause under the applicable provisions of the collective bargaining agreement. The Union then commenced this action, seeking judicial review of the Board's decision. The district court granted the Union's motion for summary judgment, concluding that the Board had exceeded its jurisdiction by giving no probative value to polygraph test results submitted by Trexler. Norfolk Southern appeals. Giving the Board's decision the deferential standard of review mandated by the Railway Labor Act, we reverse.

**I.**

Norfolk Southern commenced a disciplinary proceeding by notifying Trexler it would formally investigate whether he had falsely testified that a Norfolk Southern representative, Thomas Lynch, told a group of employees they should not elect Jack Wright as their local union chairman because Wright "always stirred up problems." Consistent with Rule 34(d) of the collective bargaining agreement, the investigation consisted of a thirteen-hour hearing conducted by a Norfolk Southern officer, C.L. Crabtree, and attended by Trexler and a Union representative. At the hearing, Trexler admitted giving the testimony at issue and stated that other Norfolk Southern

employees heard Lynch make those comments concerning Wright. Lynch denied making the comments. Other Union members who testified at the hearing did not corroborate Trexler's assertion that Lynch had made the comments at issue. At the end of the hearing, the Union offered the results of a polygraph examination Trexler had taken four days before the hearing, arguing the exam established that Trexler's prior testimony about Lynch was truthful. Hearing officer Crabtree accepted the polygraph report into the hearing record.

Eight days later, Crabtree issued a letter ruling that Trexler was "guilty of the charge brought against you." The discipline imposed was "dismissal from all services." The ruling also advised that Crabtree was "deleting [the polygraph results] from the record of the hearing" because the Employee Polygraph Protection Act ("EPPA") makes it unlawful for an employer "to use, accept, refer to, or inquire concerning the results of any lie detector test of any employee." 29 U.S.C. § 2002(2).

The Union appealed Crabtree's decision to the Board, claiming that Norfolk Southern had violated the collective bargaining agreement by terminating Trexler without "just and sufficient cause." The Board ruled in favor of Norfolk Southern in Award No. 23, issued May 27, 1998. The Board first rejected the Union's assertion that procedural defects tainted Norfolk Southern's disciplinary decision, including the Union's contention that Crabtree committed reversible error when he struck the polygraph results from the hearing record. The Board explained:

> [T]he Board is not persuaded that [Trexler] was severely prejudiced by reason of [Norfolk Southern] striking from the record the results of a polygraph test that [Trexler] had independently taken and introduced into evidence at the company hearing. We endorse the principle set forth in past awards whereby it was held that the results of polygraph examinations are totally irrelevant since such testing has been held not to be probative.

-3-

Turning to the merits of the dispute, the Board concluded that Norfolk Southern had just cause to terminate Trexler because

> there is substantial and convincing testimony of record to sustain the charge that [Trexler] did indeed give such a false statement in what would seem to the Board was a desire to hurt or embarrass both [Norfolk Southern] and its Master Mechanic Lynch by wrongfully asserting that the latter had made statements that might well be construed as tantamount to improper and unlawful interference with the election of union officers and representatives.

The Union then sought judicial review of the Board's decision. In its cross-motion for summary judgment, the Union primarily argued that Rule 34(d) of the collective bargaining agreement required Norfolk Southern to "receive all evidence" at the formal investigation, and therefore *the Board* acted outside its jurisdiction by ignoring the governing contract and excluding the polygraph results. The district court accepted this argument, granting the Union summary judgment on the ground that the Board exceeded its jurisdiction in excluding the polygraph evidence. As a remedy, the court remanded to the Board "with instructions to reinstate Audie E. Trexler with all rights unimpaired and make him whole for any loss incurred."[1] Norfolk Southern then appealed.

---

[1]If we were not reversing the district court's decision on the merits, we would nonetheless reverse the court's remedy. "Even in the very rare instances when an arbitrator's procedural aberrations rise to the level of affirmative misconduct, as a rule the court must not foreclose further proceedings by settling the merits according to its own judgment of the appropriate result, since this step would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in the collective-bargaining agreement. Instead, the court should simply vacate the award . . . . [It may] remand for further proceedings when this step seems appropriate." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 40 n.10 (1987).

## II.

Judicial review of an arbitration award is very limited, and review of the decision of a public arbitration board under the Railway Labor Act "is among the narrowest known to the law." Bhd. of Maint. of Way Employees v. Terminal R.R. Ass'n, 307 F.3d 737, 739 (8th Cir. 2002). As relevant here, the statute provides that the Board's decision may be set aside only "for failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction." 45 U.S.C. § 153 First (q). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. . . . [I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (quotations omitted); see Int'l Ass'n of Machinists v. Northwest Airlines, 858 F.2d 427, 430 (8th Cir. 1988) (holding that a Railway Labor Act award must be enforced unless it "is without foundation in reason or fact").

In this case, the Union attacks not the merits of the Board's decision, but its resolution of a procedural issue, the admissibility and probative weight to be given the polygraph examination report. The district court ruled that the Board "exceeded its jurisdiction in excluding the polygraph evidence" because Rule 34(d) of the collective bargaining agreement required that Norfolk Southern's hearing officer "receive all evidence." We disagree with this ruling for three reasons. First, hearing officer Crabtree did "receive" the polygraph report. It became part of the disciplinary hearing record even though Crabtree later "excluded" the report out of concern that Norfolk Southern would otherwise violate the EPPA. The Board's ruling that Norfolk Southern did not thereby violate Rule 34(d) is not "without foundation in reason or fact." Thus, it was not even arguably a "jurisdictional" error by the Board.

Second, Rule 34(d) prescribes the formal investigation procedures Norfolk Southern must follow before disciplining Union members. The Rule does not purport to govern the admissibility of evidence in proceedings that the Board conducts to review Norfolk Southern's disciplinary decisions. Thus, even if hearing officer Crabtree erred in excluding evidence from the company's hearing record, this procedural defect does not taint the Board's decision that Norfolk Southern had just cause to terminate Trexler. That is the only decision subject to judicial review under the Railway Labor Act. The district court erred by ignoring the procedural differences between these two stages of the grievance/arbitration process.

Third, and most important, the polygraph evidence *was not excluded* from the record before the Board. The Board simply gave this evidence no weight, relying upon its rulings in prior proceedings that such evidence is not probative. Arbitrators have broad procedural discretion. See Gunther v. San Diego & Ariz. E. Ry. Co., 382 U.S. 257, 262-63 (1965); Delta Mine Holding Co. v. AFC Coal Properties, Inc., 280 F.3d 815, 823 & n.6 (8th Cir. 2001). "Unless there is specific controlling language in the collective bargaining agreement . . . an arbitrator's decision allocating the burden of proof among the parties or in fixing the legal framework for evaluation of a grievance ordinarily cannot be reviewed in federal court." Alvey, Inc. v. Teamsters Local Union No. 688, 132 F.3d 1209, 1212 (8th Cir. 1997) (quotation omitted); see Watts v. Union Pac. R.R. Co., 796 F.2d 1240, 1243-44 (10th Cir. 1986).

As noted above, Rule 34(d) does not control this evidentiary issue. The Union argues the Board improperly went outside the collective bargaining agreement by referring to past awards involving other agreements. However, it is well established that arbitrators may look to outside sources, including prior unrelated awards, without straying beyond their jurisdiction to interpret and apply the collective bargaining agreement. See Bhd. of Maint. of Way Employees v. Soo Line R.R. Co., 266 F.3d 907, 910 (8th Cir. 2001). The Union further argues that Crabtree's surprise post-hearing ruling deprived the Union of an opportunity to present other evidence

-6-

supporting Trexler's testimony. We disagree. For purposes of judicial review, the relevant proceeding was that conducted by the Board. The Union submitted Trexler's polygraph results to the Board, and the Union could have urged the Board to receive and consider other evidence. As there is no indication in the record the Union did so, the Board clearly did not exceed its jurisdiction in resolving the dispute on the record before hearing officer Crabtree, including the "excluded" polygraph results. See Misco, 484 U.S. at 39-40 & n.8.

In Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 93 (1978), the Supreme Court held that a Railway Labor Act adjustment board "was acting within its jurisdiction and in conformity with the requirements of the Act" when it resolved an issue of equitable tolling. Likewise, the Board here acted within its jurisdiction by determining the probative value of Trexler's polygraph examination report. The manner in which the Board resolves evidentiary disputes "does not fall within any of the narrow jurisdictional grounds for review under 45 U.S.C. § 153 First (q)." Bates v. Baltimore & Ohio R.R. Co., 9 F.3d 29, 32 (7th Cir. 1993).

The judgment of the district court is reversed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.