**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0920n.06

No. 11-1915

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 20, 2012**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| MGM GRAND DETROIT, LLC, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT WORKERS | ) | |
| OF AMERICA; UAW LOCAL 7777, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: ROGERS and GRIFFIN, Circuit Judges; HOOD, District Judge[*]

ROGERS, Circuit Judge. In this labor dispute between a casino operator and the union representing an employee discharged by the casino, an arbitrator ordered reinstatement because the employer had not given the employee sufficient procedural process with respect to some of the charges against him. The arbitrator derived the requirement for some process from the collective bargaining agreement's requirement of "just cause." Although perhaps a linguistic stretch, the required process was at least an arguable interpretation of the collective bargaining agreement, and under our precedents that was sufficient to uphold a labor arbitration award. The district court therefore should not have vacated the award.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Terry Wright was employed by MGM Grand as a craps dealer from 1999 until his termination on October 14, 2008. Wright was a member of the UAW (International Union, United Automobile, Aerospace and Agricultural Implement Workers of America) and his employment was governed by a collective bargaining agreement. The agreement provided that:

> No regular Employee, after having completed the probationary period, shall be disciplined and/or discharged except for just cause. Disciplinary actions will be progressive and may include but are not limited to: written counselings, suspension and discharge. The parties agree that progressive discipline normally requires, prior to suspension or discharge, that an Employee be given an opportunity to correct the deficiency through a written counseling notice, but that within the principle of progressive discipline, certain conduct may warrant immediate suspension or discharge when appropriate. This type of conduct includes, but is not limited to, that which is set forth in MGM Grand Detroit Casino Policy # 417. A regular Employee may contest disciplinary action imposed upon him or her through the Grievance and Arbitration procedure set forth in Article 23.

R.1-2 at 34–35.

Policy # 417 provides that insubordination and hustling—*i.e.*, soliciting or pressuring a guest for a tip—are "just cause" for immediate separation. It further provides that a violation of on-the-job rules, including the rules, regulations and procedures of each department, inadequate job performance, and discourteous or disrespectful behavior toward management are "just cause" and will result in disciplinary action up to and including separation.

Wright was disciplined several times between September 2007 and the date of his termination. He was placed on unpaid leave for rude and discourteous conduct toward supervisors in September 2007 and received an unpaid suspension in June 2008 for violating MGM's chain-of-command and being discourteous to a guest and a supervisor. In July 2008, Wright was suspended for three days for whistling while dealing at the table, for using profanity in front of guests, and for

various other policy violations. At a July 18, 2008 meeting, Wright was told that he would be terminated if his work performance continued to be problematic.

On October 6, 2008, Assistant Shift Manager Lynn Tang instructed another MGM supervisor to tell Wright not to clap and cheer at the craps table because it was unprofessional and might discourage players from betting. Wright argued with the supervisor about this instruction and later approached Tang and questioned the directive not to cheer. The conversation became heated and Wright took a step toward Tang while pointing his finger at her, causing her to take a step backward. At the end of the two-and-one-half minute conversation, Wright walked away while repeatedly shaking his finger at Tang. Tang perceived Wright's actions during the conversation as threatening. Later that afternoon, Wright again approached Tang, this time to apologize. Tang saw Wright in a hallway later that afternoon and went into the women's bathroom to avoid him.

Wright was called to the casino administration office and suspended pending investigation of the incident with Tang. Wright was given a counseling notice informing him that he was being suspended for "'rude and discourteous behavior, job performance and following game procedures.'" R. 1-5 at 26. Wright attached a brief statement about the interaction with Tang to the notice and submitted a more complete statement the following day. Wright's October 7, 2008, statement disputed allegations that he violated gaming procedures by cheering, cheque slamming, or improperly taking bets. In that statement, Wright also complained that he was not given sufficient notice of the reasons he was suspended to allow him to respond adequately.

MGM conducted an investigation of the incident with Tang during which it reviewed videotape from October 6. Review of the videotape revealed that Wright had committed multiple game procedure violations, which were catalogued and attached to his separation notice. Wright had

a meeting with MGM management about his suspension on October 9, but Wright testified that no one discussed cheque slamming or any other game procedure violations at the meeting.

MGM terminated Wright on October 14, 2008. Thereafter, the union filed six grievances on Wright's behalf. After MGM denied the grievances, the case was submitted to arbitration. During the arbitration proceedings, the MGM Vice President who decided to terminate Wright testified that the incident with Tang was "the last straw" but that the termination decision was based upon "a combination of everything." *Id.* at 55. The arbitrator denied five of Wright's six grievances, but concluded that Wright was terminated in violation of the "just cause" provision of the agreement because MGM failed to give him notice of, and an opportunity to respond to, the game procedure violations revealed in the October 6 videotape. The arbitrator reinstated Wright with full seniority, but without back pay, gratuities, or benefits.

MGM filed an action in the district court seeking to vacate the arbitrator's award to the extent that it reinstated Wright. The district court granted MGM's motion for summary judgment and vacated the arbitrator's award, holding that the arbitrator's interpretation conflicted with the express terms of the agreement. The union timely appealed the district court's order vacating the arbitrator's award.

The arbitrator's award should not have been vacated because the arbitrator arguably construed or applied the collective bargaining agreement when he held that MGM did not have "just cause" to discharge Wright. "Although we review a district court's summary disposition *de novo*, in the context of arbitration, courts play only a limited role when asked to review the decision of an arbitrator." *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411 (6th Cir. 2008) (internal quotation marks omitted). To vacate a labor arbitration award

where the arbitrator was not acting outside his authority, and where there was no fraud, conflict of interest, or dishonesty, we must find that, in resolving any legal or factual disputes in the case, the arbitrator was not "arguably construing or applying the contract." *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (*en banc*) (internal quotation marks omitted). The parties and the district court agree that this is the proper standard to be applied.

If the arbitrator "does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made serious, improvident or silly errors in resolving the merits of the dispute." *Id.* (internal quotation marks omitted). "[I]n most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that." *Id.*

This extraordinarily deferential standard was plainly met here. The Arbitrator held that:

[T]he concept of just cause consists of both procedural and substance components, including the obligation of the Employer to conduct a fair investigation of the relevant facts before making a discharge decision.

Arbitrators have recognized that as part of the just cause procedure component, namely, due process and the obligation to conduct a fair investigation is allowing the employee the opportunity to respond to the charges prior to the final decision to discharge. The rationale is to give the employee the opportunity to both offer a defense to the charge against him/her and persuade management of the employee's explanation of the alleged facts.

R.1-5 at 65. The arbitrator concluded that "the procedural violation of not advising Mr. Wright of the work performance charges against him prior to his discharge and giving him an opportunity to explain himself before the decision to discharge, would support a reinstatement under the just cause standard." *Id.* at 72.

The arbitrator arguably interpreted the collective bargaining agreement when he held that the term "just cause" as used in the agreement encompassed both substantive and procedural

-5-

components. The arbitrator quoted Policy # 417's list of substantive offenses that provide "just cause" for termination—including insubordination and game procedure violations. But the arbitrator held that to terminate an employee for "just cause," MGM was required both to show that the employee committed one of the listed offenses *and* to provide the employee with notice of the alleged offense or offenses and an opportunity to explain his actions before he was discharged. The arbitrator reasoned that the "just cause" termination provision implicitly required these procedural protections. Whether this interpretation of the "just cause" language was correct is not the question under *Michigan Family Resources*. We are constrained to asking whether the arbitrator *arguably* interpreted the contract—and he clearly did. Accordingly, his award must be confirmed.

MGM argues that allowing for notice and an opportunity for an employee to contest charges prior to termination is contrary to the collective bargaining agreement's provision for "immediate termination" for certain offenses. However, the arbitrator plausibly interpreted the "immediate termination" provision as qualifying or limiting the general requirement that an employee be subject to progressive discipline, rather than negating the requirement that an employee be given procedural due process. The agreement provides "that progressive discipline normally requires, prior to suspension or discharge, that an Employee be given an opportunity to correct the deficiency through a written counseling notice, but that within the principle of progressive discipline, certain conduct may warrant immediate suspension or discharge when appropriate." R.1-2 at 35. The agreement then states that such conduct "includes, but is not limited to, that which is set forth in MGM Grand Detroit Casino Policy # 417." *Id.* Thus, under an arguable interpretation of the contract, an employee who commits an offense outlined in Policy # 417 is not entitled to progressive discipline, but is still entitled to certain procedural due process protections under the agreement's just cause

-6-

standard. We cannot say that the arbitrator's interpretation was "so untethered to the terms of the agreement . . . that it would cast doubt on whether the arbitrator indeed was engaged in interpretation." *Mich. Family Res.*, 475 F.3d at 753 (internal quotation marks and citation omitted.)

MGM makes two additional arguments. MGM argues that the arbitrator exceeded his authority (1) by ordering Wright's reinstatement after concluding that he was insubordinate, and (2) by disregarding the procedural due process that MGM did afford Wright. The first of these arguments fails because even though the arbitrator found that Wright was insubordinate and was provided procedural due process with respect to the insubordination charges, MGM's Vice President testified that his decision to terminate Wright was "a combination of everything"—that is, the insubordination, the game procedure violations, and Wright's other infractions. R.1-5 at 55. The Vice President testified that Wright's interaction with Tang was "the last straw" but that the termination decision rested on the sum total of Wright's infractions. *Id.* Because Wright's interaction with Tang was not alone the cause of his termination, Wright was arguably entitled to procedural due process with respect to each infraction that contributed to his termination. Because Wright was found to have been denied that process with respect to game procedure violations—a factor that influenced the termination decision—the arbitrator did not exceed his authority in reinstating Wright.

Additionally, MGM's argument that Wright was afforded procedural due process with respect to the game procedure violations is not compelling. Wright was given a suspension notice that indicated that he was being suspended for "'rude and discourteous behavior, job performance and following game procedures.'" *Id.* at 26. The notice did not indicate with any specificity what type of game procedures were violated or when these alleged violations occurred. Wright's October

7, 2008, statement disputed allegations that he violated gaming procedures by cheering, cheque slamming, or improperly taking bets. But in that statement Wright also complained that he was not given sufficient notice of the reasons he was suspended to allow him to respond adequately. MGM concedes that Wright was not specifically told that he was accused of hustling a guest for a tip and hawking the dice, and that Wright did not respond to these allegations in his written statements submitted in connection with his suspension. Under the arbitrator's interpretation of the collective bargaining agreement, Wright was entitled to respond to charges of hustling a guest for a tip and hawking the dice before being terminated.

For the foregoing reasons, we reverse and remand the case so that judgment may be entered for the union.