NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1223n.06

**No. 12-3271**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ROYAL ICE CREAM CO.; MIDTOWN TRANSPORTATION CO., LLC, | ) ) ) | **FILED** *Nov 26, 2012* DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) |  |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| TEAMSTERS LOCAL NO. 336, | ) ) |  |
| Defendant-Appellee. | ) |  |

Before:  SUTTON and STRANCH, Circuit Judges; STEEH, District Judge.[*]

SUTTON, Circuit Judge.  Pierre's Ice Cream and its affiliated companies fired two employees when their Family and Medical Leave Act leave expired.  The union filed grievances on behalf of the employees, and the matter went to arbitration.  After determining that the companies improperly fired the employees, the arbitrator ordered them reinstated.  The district court denied the companies' motion to vacate the award.  We affirm.

I.

---

[*]The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

Royal Ice Cream makes, and Midtown Transportation distributes, Pierre's Ice Cream. Before this dispute arose, Wayne Arndt stacked products in freezers for Royal Ice Cream, and Ralph Bonness drove a truck for Midtown Transportation.

Arndt and Bonness injured their backs in separate on-the-job incidents, and both of them took FMLA-eligible leave in August 2009. Arndt's physician permitted him to return to work with restrictions on November 23, but certified four days later that he could not perform any work for the time being. Bonness's physician initially released him for light duty work in August, but Midtown became concerned about Bonness's ability to operate a motor vehicle safely. When the companies informed both employees that their FMLA leave had expired, the employees requested additional leaves of absence. At Midtown's request, Bonness provided a letter from his physician specifying his injuries and estimating he could return to work in six months. Arndt wanted to see a neurosurgeon to evaluate his condition but never offered an explanation for taking more time off. In the meantime, each employee submitted claims with the Ohio Bureau of Workers' Compensation.

The companies denied the two employees' requests for additional leave and fired them both. The union filed grievances, arguing the companies discharged the employees without just cause in violation of the collective bargaining agreement.

The CBA contains several relevant provisions. Article II says in relevant part:

**F.      LEAVE OF ABSENCE.**

An unpaid leave of absence may be granted at the Company's discretion upon the following conditions:

1. Maximum leave of six (6) months.

2. One (1) leave only every five (5) years.

3. Request must be made in writing three (3) months in advance.

4. No more than one (1) leave granted at one (1) time.

5. Leaves for other employment are prohibited.

6. The Company and the Union agree to comply with the provisions of the Family and Medical Leave Act of 1993 (FMLA). The Company and the Union further agree that each shall have the rights, obligations and options provided for under the FMLA when applicable regardless of any contrary or conflicting contract provision.

G.      WORKING WHILE ON LEAVE OF ABSENCE.

. . . Failure to return to work at the expiration of any leave of absence constitutes grounds for termination. . . .

The CBA allows the companies to discharge employees "for just cause," Art. V § A(3), disclaims the companies' "right to discharge any employee without good and just cause," *id.* § C(1), and lists examples of just cause, *id.* § C(3). In addition: the CBA counts the "first year of absence due to an industrial accident . . . as though worked" for the purposes of accruing vacation time, Art. IV § A(6), and it says that "[i]f an employee is unable to return to work for a period of 365 days, his employment will be terminated," Art. XV § B(3).

After the companies denied the grievances, the matter proceeded to binding arbitration between the union and the companies, as called for under the CBA. *See* Art. XI. The arbitrator, William J. Miller, Jr., held a hearing and issued a written opinion in favor of the union. According to the arbitrator, most of Article II §§ F and G do not apply to leave that follows work-related

injuries, and the companies' incomplete knowledge of the employees' injuries meant the companies lacked good cause to fire the employees. Arb. Op. (R.12-3) at 39–42. The arbitrator ordered the companies to reinstate Arndt and Bonness and to compensate them for their losses. *Id.* at 43.

The companies sued the union, seeking to vacate the arbitration award. The union counterclaimed, seeking to enforce the award. The district court upheld the award.

II.

In challenging the district court's decision, the companies face a steep climb. Review of an arbitration award is "one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008) (internal quotation marks omitted). Only in three types of "procedural aberration" will we upset an award: if the arbitrator "act[s] outside his authority by resolving a dispute not committed to arbitration"; commits fraud, maintains a conflict of interest or "otherwise act[s] dishonestly"; or does not "arguably constru[e] or apply[] the contract" in settling the dispute. *Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc) (internal quotation marks omitted); *see Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

The companies do not allege that the arbitrator resolved a dispute not subject to arbitration. Nor do they allege that the arbitrator acted fraudulently, with a conflict of interest or dishonestly. They instead argue that the arbitrator "did not even arguably construe" the CBA in reaching his decision and thus "[e]xceeded" his arbitral authority. Br. at 18; *Equitable Res., Inc. v. United Steel,*

*Local 8-512*, 621 F.3d 538, 546–47 (6th Cir. 2010).  That is not an easy argument to win.  Yes, an arbitral award may be "so untethered to the terms of the agreement" as to "cast doubt on whether the arbitrator indeed was engaged in interpretation." *Mich. Family Res.*, 475 F.3d at 753 (internal quotation marks omitted).  But that will be the most "rare" and "most egregious" of cases. *Id.*  So long as "the arbitrator appeared to be engaged in interpretation" and did not "dispense his own brand of industrial justice," he has arguably construed the CBA—and that suffices to uphold the award, whether we agree with the arbitrator's ruling or not. *Id.* at 751, 753 (internal quotation marks omitted).

The arbitrator's 43-page opinion satisfies this modest standard.  To start, the arbitrator construed the key section of the CBA—Article V—which discusses discharge for "just cause," *see, e.g.*, Arb. Op. at 26, and which "requires a full and fair investigation" of the employees' records, including consideration of mitigating factors. *Id.* at 29.  The companies, the arbitrator reasoned, did not investigate Arndt's or Bonness's injuries or discuss the injuries with them, and they did not consider the employees' otherwise strong records:  30 and 13 years of productive service for the companies. *Id.* at 29–30.  Nor, he added, did the companies warn Arndt or Bonness that the companies were considering firing them, thus depriving the employees of an "opportunity to advocate for their jobs." *Id.* at 29.  Nor, before firing the employees, did the companies obtain a final word about the employees' conditions from their physicians and the Bureau. *Id.* at 39–42.  Taking all of these considerations together, the arbitrator concluded, the companies lacked good cause to fire Arndt and Bonness without knowing whether and when they might be "medically able to work,"

*id.* at 39, and without giving them a chance to oppose the firing. *See MGM Grand Detroit, LLC v. Int'l Union*, No. 11-1915, 2012 U.S. App. LEXIS 17800, at *8–9 (6th Cir. Aug. 20, 2012) ("The arbitrator arguably interpreted the collective bargaining agreement when he held that the term 'just cause' as used in the agreement encompassed both substantive and procedural components."); *see also Coolidge v. Riverdale Local Sch. Dist.*, 797 N.E.2d 61, 70–71 (Ohio 2003); *Bickers v. W. & S. Life Ins. Co.*, 879 N.E.2d 201, 205 (Ohio 2007) (clarifying *Coolidge* and stating that statutory provision requiring just cause for discharge of teachers barred discharge of teachers pursuing workers' compensation claims).

The arbitrator likewise responded to the companies' arguments—above all their argument that they were entitled to fire Arndt and Bonness under Article II § F, which gives the companies discretion to grant "unpaid leave[s] of absence," and under Article II § G, which notes that "[f]ailure to return to work at the expiration of any leave of absence constitutes grounds for termination." These sections do not apply to work-related injuries, the arbitrator reasoned, because Article II § F(3) mentions that a "[r]equest" for leave "must be made in writing three (3) months in advance," a requirement that makes little sense if applied to "spontaneous . . . work related accidents." Arb. Op. at 27. The arbitrator also listed other sections of the CBA that bolstered his interpretation. Article IV § A(6), for example, discusses vacation accrual for employees suffering a "year of absence due to an industrial accident," and Article XV § B(3) states that "[i]f an employee is unable to return to work for a period of 365 days, his employment will be terminated." *See* Arb. Op. at 27–28. These provisions imply, or so the arbitrator could plausibly think, that employees with work-related injuries

may stay on unpaid leave for at least one year, suggesting that the Article II § F(1) six-month-leave limitation does not apply to such injuries.

Faced with these ambiguities in the CBA and the oddities with the companies' interpretation, the arbitrator also considered testimony regarding the companies' past conduct. That testimony indicated that the CBA permits an employee with a work-related injury "to be off at least one year for a Worker's Comp[ensation] injury." *See* Arb. Hearing (R.12-2) at 188 (testimony of Michael Klingbeil, Union president); Arb. Op. at 28. The testimony also indicated that, before the time period affected by these requests, the companies had not required an employee to request an Article II § F leave for a work-related injury in the prior 33 years. Arb. Hearing at 193–94. The arbitrator accordingly interpreted Article II § F to apply to "discretionary leave" but not to leave "for a work related injury." Arb. Op. at 42. On that view, the companies had no automatic authority to fire Arndt and Bonness but had to identify "good cause" for doing so.

This reasoning "arguably constru[es]" the CBA. *Mich. Family Res.*, 475 F.3d at 753. It construes the "good cause" standard in Article V, and it reconciles Article II § F with conflicting sections. That does not make the arbitrator's interpretation right, and it does not mean we would have construed the CBA in the same way. But that does not matter. Whether we agree with the arbitrator's reasoning, or disagree with it, is beside the point. "Otherwise, every error would be grounds for judicial intervention, which is inconsistent with the Supreme Court's insistence that we must tolerate 'serious,' 'improvident' and 'silly' legal and factual arbitral errors." *Mich. Family Res.*, 475 F.3d at 756. What matters is that it is not "implausible . . . that the arbitrator was

construing the contract." *Id.* at 753. His conclusions reflect a "good-faith attempt to interpret" the CBA and as a result survive our "exceedingly deferential" review. *Titan Tire Corp. v. United Steelworkers of Am., Local 890L*, 656 F.3d 368, 374–75 (6th Cir. 2011) (internal quotation marks omitted).

The companies complain that the arbitrator overlooked Art. II § F(6), which reserves the companies' and employees' rights under the FMLA. But it is by no means clear what that provision means. In particular, it does not directly answer the question whether *other* provisions of the CBA permit the companies to fire someone merely for failing to return to work at the end of FMLA leave. The companies also complain that the arbitrator overlooked Art. II § G, which provides that "[f]ailure to return to work at the expiration of any leave of absence constitutes grounds for termination." But the arbitrator had no need to dwell on this provision once he found that the companies impermissibly *denied* leave to Arndt and Bonness. Of course, all of this goes only to the merits of, not the process underlying, the arbitration award. Neither of these objections shows that the arbitrator failed to ground his award in an interpretation of the CBA.

III.

For these reasons, we affirm.