# MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION *v.* GARVEY

No. 00–1210.   Decided May 14, 2001

PER CURIAM.

The Court of Appeals for the Ninth Circuit here rejected an arbitrator's factual findings and then resolved the merits of the parties' dispute instead of remanding the case for further arbitration proceedings. Because the court's determination conflicts with our cases limiting review of an arbitrator's award entered pursuant to an agreement between an employer and a labor organization and prescribing the appropriate remedy where vacation of the award is warranted, we grant the petition for a writ of certiorari and reverse. The motions for leave to file briefs *amicus curiae* of the National Academy of Arbitrators and the Office of the Commissioner of Baseball are granted.

In the late 1980's, petitioner Major League Baseball Players Association (Association) filed grievances against the Major League Baseball Clubs (Clubs), claiming the Clubs had colluded in the market for free-agent services after the 1985, 1986, and 1987 baseball seasons, in violation of the industry's collective-bargaining agreement. A free agent is a player who may contract with any Club, rather than one whose right to contract is restricted to a particular Club. In a

series of decisions, arbitrators found collusion by the Clubs and damage to the players. The Association and Clubs subsequently entered into a Global Settlement Agreement (Agreement), pursuant to which the Clubs established a $280 million fund to be distributed to injured players. The Association also designed a "Framework" to evaluate the individual player's claims, and, applying that Framework, recommended distribution plans for claims relating to a particular season or seasons.

The Framework provided that players could seek an arbitrator's review of the distribution plan. The arbitrator would determine "'only whether the approved Framework and the criteria set forth therein have been properly applied in the proposed Distribution Plan.'" *Garvey* v. *Roberts*, 203 F. 3d 580, 583 (CA9 2000) *(Garvey I)*. The Framework set forth factors to be considered in evaluating players' claims, as well as specific requirements for lost contract-extension claims. Such claims were cognizable "'only in those cases where evidence exists that a specific offer of an extension was made by a club prior to collusion only to thereafter be withdrawn when the collusion scheme was initiated.'" *Id.,* at 584.

Respondent Steve Garvey, a retired, highly regarded first baseman, submitted a claim for damages of approximately $3 million. He alleged that his contract with the San Diego Padres was not extended to the 1988 and 1989 seasons due to collusion. The Association rejected Garvey's claim in February 1996, because he presented no evidence that the Padres actually offered to extend his contract. Garvey objected, and an arbitration hearing was held. He testified that the Padres offered to extend his contract for the 1988 and 1989 seasons and then withdrew the offer after they began colluding with other teams. He presented a June 1996 letter from Ballard Smith, Padres' President and CEO from 1979 to 1987, stating that, before the end of the 1985 season, Smith offered to extend Garvey's contract through

the 1989 season, but that the Padres refused to negotiate with Garvey thereafter due to collusion.

The arbitrator denied Garvey's claim, after seeking additional documentation from the parties. In his award, he explained that "'[t]here exists . . . substantial doubt as to the credibility of the statements in the Smith letter.'" *Id.*, at 586. He noted the "stark contradictions" between the 1996 letter and Smith's testimony in the earlier arbitration proceedings regarding collusion, where Smith, like other owners, denied collusion and stated that the Padres simply were not interested in extending Garvey's contract. *Ibid.* The arbitrator determined that, due to these contradictions, he "'must reject [Smith's] more recent assertion that Garvey did not receive [a contract] extension'" due to collusion, and found that Garvey had not shown a specific offer of extension. *Ibid.* He concluded:

> "'The shadow cast over the credibility of the Smith testimony coupled with the absence of any other corroboration of the claim submitted by Garvey compels a finding that the Padres declined to extend his contract not because of the constraints of the collusion effort of the clubs but rather as a baseball judgment founded upon [Garvey's] age and recent injury history.'" *Ibid.*

Garvey moved in Federal District Court to vacate the arbitrator's award, alleging that the arbitrator violated the Framework by denying his claim. The District Court denied the motion. The Court of Appeals for the Ninth Circuit reversed by a divided vote. The court acknowledged that judicial review of an arbitrator's decision in a labor dispute is extremely limited. But it held that review of the merits of the arbitrator's award was warranted in this case, because the arbitrator "'dispensed his own brand of industrial justice.'" *Id.*, at 589. The court recognized that Smith's prior testimony with respect to collusion conflicted with the statements in his 1996 letter. But in the court's view, the arbitra-

tor's refusal to credit Smith's letter was "inexplicable" and "border[ed] on the irrational," because a panel of arbitrators, chaired by the arbitrator involved here, had previously concluded that the owners' prior testimony was false. *Id.*, at 590. The court rejected the arbitrator's reliance on the absence of other corroborating evidence, attributing that fact to Smith and Garvey's direct negotiations. The court also found that the record provided "strong support" for the truthfulness of Smith's 1996 letter. *Id.*, at 591–592. The Court of Appeals reversed and remanded with directions to vacate the award.

The District Court then remanded the case to the arbitration panel for further hearings, and Garvey appealed. The Court of Appeals, again by a divided vote, explained that *Garvey I* established that "the conclusion that Smith made Garvey an offer and subsequently withdrew it because of the collusion scheme was the only conclusion that the arbitrator could draw from the record in the proceedings." No. 00–56080, 2000 WL 1801383, *1 (CA9, Dec. 7, 2000) (unpublished), judgt. order reported at 243 F. 3d 547 *(Garvey II)*. Noting that its prior instructions might have been unclear, the court clarified that *Garvey I* "left only one possible result—the result our holding contemplated—an award in Garvey's favor." 2000 WL 1801383, at *1. The Court of Appeals reversed the District Court and directed that it remand the case to the arbitration panel with instructions to enter an award for Garvey in the amount he claimed.[1]

---

[1] Garvey contends that, because the Association's petition was filed more than 90 days after *Garvey I*, we cannot consider a challenge raising issues resolved in that decision. But there is no question that the Association's petition was filed in sufficient time for us to review *Garvey II*, and we have authority to consider questions determined in earlier stages of the litigation where certiorari is sought from the most recent of the judgments of the Court of Appeals. *Mercer* v. *Theriot*, 377 U. S. 152 (1964) *(per curiam); Hamilton-Brown Shoe Co.* v. *Wolf Brothers & Co.*, 240 U. S. 251, 258 (1916).

The parties do not dispute that this case arises under § 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U. S. C. § 185(a), as the controversy involves an assertion of rights under an agreement between an employer and a labor organization. Although Garvey's specific allegation is that the arbitrator violated the Framework for resolving players' claims for damages, that Framework was designed to facilitate payments to remedy the Clubs' breach of the collective-bargaining agreement. Garvey's right to be made whole is founded on that agreement.

Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. *Paperworkers* v. *Misco, Inc.*, 484 U. S. 29, 36 (1987). We recently reiterated that if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Eastern Associated Coal Corp.* v. *Mine Workers*, 531 U. S. 57, 62 (2000) (quoting *Misco, supra,* at 38). It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense[s] his own brand of industrial justice" that his decision may be unenforceable. *Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U. S. 593, 597 (1960). When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award. *Misco*, 484 U. S., at 39.

In discussing the courts' limited role in reviewing the merits of arbitration awards, we have stated that "'courts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim.'"

*Id.*, at 37 (quoting *Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 568 (1960)). When the judiciary does so, "it usurps a function which . . . is entrusted to the arbitration tribunal." *Id.*, at 569; see also *Enterprise Wheel & Car Corp.*, *supra*, at 599 ("It is the arbitrator's construction [of the agreement] which was bargained for . . ."). Consistent with this limited role, we said in *Misco* that "[e]ven in the very rare instances when an arbitrator's procedural aberrations rise to the level of affirmative misconduct, as a rule the court must not foreclose further proceedings by settling the merits according to its own judgment of the appropriate result." 484 U. S., at 40–41, n. 10. That step, we explained, "would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for" in their agreement. *Ibid.* Instead, the court should "simply vacate the award, thus leaving open the possibility of further proceedings if they are permitted under the terms of the agreement." *Ibid.*

To be sure, the Court of Appeals here recited these principles, but its application of them is nothing short of baffling. The substance of the court's discussion reveals that it overturned the arbitrator's decision because it disagreed with the arbitrator's factual findings, particularly those with respect to credibility. The Court of Appeals, it appears, would have credited Smith's 1996 letter, and found the arbitrator's refusal to do so at worst "irrational" and at best "bizarre." *Garvey I*, 203 F. 3d, at 590–591. But even "serious error" on the arbitrator's part does not justify overturning his decision, where, as here, he is construing a contract and acting within the scope of his authority. *Misco, supra*, at 38.

In *Garvey II*, the court clarified that *Garvey I* both rejected the arbitrator's findings and went further, resolving the merits of the parties' dispute based on the court's assessment of the record before the arbitrator. For that reason, the court found further arbitration proceedings inappropri-

ate. But again, established law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision. *Misco, supra,* at 40, n. 10; see also *American Mfg. Co., supra,* at 568. Even when the arbitrator's award may properly be vacated, the appropriate remedy is to remand the case for further arbitration proceedings. *Misco, supra,* at 40, n. 10. The dissent suggests that the remedy described in *Misco* is limited to cases where the arbitrator's errors are procedural. *Post,* at 512 (opinion of STEVENS, J.). *Misco* did involve procedural issues, but our discussion regarding the appropriate remedy was not so limited. If a remand is appropriate *even* when the arbitrator's award has been set aside for "procedural aberrations" that constitute "affirmative misconduct," it follows that a remand ordinarily will be appropriate when the arbitrator simply made factual findings that the reviewing court perceives as "irrational." The Court of Appeals usurped the arbitrator's role by resolving the dispute and barring further proceedings, a result at odds with this governing law.[2]

For the foregoing reasons, the Court of Appeals erred in reversing the order of the District Court denying the motion to vacate the arbitrator's award, and it erred further in directing that judgment be entered in Garvey's favor. The petition for a writ of certiorari is granted, the judgment of

---

[2] In any event, no serious error on the arbitrator's part is apparent in this case. The fact that an earlier panel of arbitrators rejected the owners' testimony as a whole does not compel the conclusion that the panel found Smith's specific statements with respect to Garvey to be false. The arbitrator's explanation for his decision indicates that he simply found Smith an unreliable witness and that, in the absence of corroborating evidence, he could only conclude that Garvey failed to show that the Padres had offered to extend his contract. The arbitrator's analysis may have been unpersuasive to the Court of Appeals, but his decision hardly qualifies as serious error, let alone irrational or inexplicable error. And, as we have said, any such error would not justify the actions taken by the court.

the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE GINSBURG, concurring in part and concurring in the judgment.

I agree with the Court that in *Garvey* v. *Roberts*, 203 F. 3d 580 (CA9 2000), the Ninth Circuit should not have disturbed the arbitrator's award. Correction of that error sets this case straight. I see no need to say more.

JUSTICE STEVENS, dissenting.

It is well settled that an arbitrator "does not sit to dispense his own brand of industrial justice." *Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U. S. 593, 597 (1960). We have also said fairly definitively, albeit in dicta, that a court should remedy an arbitrator's "procedural aberrations" by vacating the award and remanding for further proceedings. *Paperworkers* v. *Misco, Inc.*, 484 U. S. 29, 40–41, n. 10 (1987). Our cases, however, do not provide significant guidance as to what standards a federal court should use in assessing whether an arbitrator's behavior is so untethered to either the agreement of the parties or the factual record so as to constitute an attempt to "dispense his own brand of industrial justice." Nor, more importantly, do they tell us how, having made such a finding, courts should deal with "the extraordinary circumstance in which the arbitrator's own rulings make clear that, more than being simply erroneous, his finding is completely inexplicable and borders on the irrational." *Garvey* v. *Roberts*, 203 F. 3d 580, 590 (CA9 2000) (case below). Because our case law is not sufficiently clear to allow me to conclude that the case below was wrongly decided—let alone to conclude that the decision was so wrong as to require the extraordinary remedy of a sum-

mary reversal—I dissent from the Court's disposition of this petition.

Without the benefit of briefing or argument, today the Court resolves two difficult questions. First, it decides that even if the Court of Appeals' appraisal of the merits is correct—that is to say, even if the arbitrator did dispense his own brand of justice untethered to the agreement of the parties, and even if the correct disposition of the matter is perfectly clear—the only course open to a reviewing court is to remand the matter for another arbitration. That conclusion is not compelled by any of our cases, nor by any analysis offered by the Court. As the issue is subject to serious arguments on both sides, the Court should have set this case for argument if it wanted to answer this remedial question.

Second, without reviewing the record or soliciting briefing, the Court concludes that, in any event, "no serious error on the arbitrator's part is apparent in this case." *Ante*, at 511, n. 2. At this stage in the proceedings, I simply cannot endorse that conclusion. After examining the record, obtaining briefing, and hearing oral argument, the Court of Appeals offered a reasoned explanation of its conclusion. See 203 F. 3d, at 589–592; see also *id.*, at 593–594 (Hawkins, J., concurring). Whether or not I would ultimately agree with the Ninth Circuit's analysis, I find the Court's willingness to reverse a factbound determination of the Court of Appeals without engaging that court's reasoning a troubling departure from our normal practice.*

Accordingly, I respectfully dissent.

---

*The Court's opinion is somewhat ambiguous as to its reasons for overturning the portion of the Court of Appeals' decision setting aside the arbitration. It is unclear whether the majority is saying that a court may never set aside an arbitration because of a factual error, no matter how perverse, or whether the Court merely holds that the error in this case was not sufficiently severe to allow a court to take that step. If it is the latter, the Court offers no explanation of what standards it is using or of its reasons for reaching that conclusion.