**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 3, 2004**

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

NO. 03-11062

_____

ROCK-TENN COMPANY,

Plaintiff-Counter Defendant-Appellee,

versus

PAPER, ALLIED-INDUSTRIAL, CHEMICAL AND
ENERGY WORKERS INTERNATIONAL UNION,
AFL-CIO, CLC AND LOCAL UNION NO. 4-0895,

Defendant-Counter Claimant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:02-CV-2582-L

Before REAVLEY, JONES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The Paper, Allied-Industrial, Chemical and Energy Workers International Union ("Union") appeals the district court's decision vacating an arbitrator's ruling that Appellant Rock-Tenn improperly subcontracted its long-haul trucking work in violation of the parties' collective bargaining agreement ("CBA"). For the following reasons, we AFFIRM.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Rock-Tenn is a paper manufacturing company that operates a mill in Dallas, Texas. The company uses truck drivers to deliver its paper products to customers and distribution centers throughout the United States, relying both on employees and subcontractors for these deliveries. The company categorizes these deliveries according to their distance: trips of less than 100 miles are "short-haul" routes, while trips of more than 100 miles are "long-haul" routes. Historically, the company has employed relatively few drivers, and subcontractors have carried the bulk of the delivery loads. The precise percentage of loads carried by subcontractors has varied over the years, ranging from 66 percent, when Rock-Tenn employed six or seven truck drivers, to 90 percent, when Rock-Tenn employed only one or two drivers.

In late 2001, Rock-Tenn decided to subcontract all of its long-haul deliveries in an effort to save money. Because company drivers earn extra compensation for long-haul routes, Rock-Tenn's decision reduced the pay of the company's six drivers, but the company did not terminate any employees. The drivers filed grievances against the company, and the case eventually proceeded to arbitration. The arbitrator ruled in favor of the Union, concluding that although Rock-Tenn had the right to subcontract its shipping operations, its rights were not unfettered. The arbitrator ordered Rock-Tenn to "restore the 'status quo'" and assign long-haul routes to company truck drivers "at the same level as

before they were discontinued" — specifically, "to the maximum extent allowed by Department of Transportation regulations."

Rock-Tenn appealed the arbitrator's decision to the district court. The court ultimately concluded that the arbitrator had exceeded his authority by ignoring the plain language of the CBA and imposing restrictions on Rock-Tenn's rights to subcontract not contained in the CBA. The Union appealed.

The district court rejected the conclusions of both the arbitrator and the magistrate judge and granted summary judgment in favor of Rock-Tenn. We review the district court's grant de novo, applying the same standard as the district court.[1] Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2]

Judicial review of arbitration awards arising from the terms of a collective bargaining agreement is extremely limited. We must affirm the arbitration award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority."[3] If the arbitrator has not exceeded his authority, "the fact that a court is convinced he committed

---

[1] Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767, 253 F.3d 821, 824 (5th Cir. 2001).

[2] FED. R. CIV. P. 56(c); Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

[3] United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

3

serious error does not suffice to overturn his decision."[4]  We may not overrule the arbitrator's award simply because we interpret the contract differently, even if we are convinced he committed serious error.[5]  "It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable."[6]  We have held that when an arbitrator ignores the express language of a CBA, he has exceeded his authority and the arbitration award must be vacated.[7]

The district court concluded that the arbitrator's decision conflicted with the express language of the CBA. Article III of the CBA provides:  "Nothing in this Agreement shall limit in anyway [sic] the Company's subcontracting work or shall require the Company to perform any particular work in this plant rather than elsewhere."  The district court concluded that this provision by its plain terms gives Rock-Tenn an unlimited right to subcontract work and that the arbitrator exceeded his authority by imposing a limitation on this right.

---

[4]     Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).

[5]     Int'l Chem. Workers Union v. Columbian Chems. Co., 331 F.3d 491, 494 (5th Cir. 2003).

[6]     Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

[7]     Houston Lighting & Power Co. v. Int'l Broth. of Elec. Workers, Local Union No. 66, 71 F.3d 179, 184 (5th Cir. 1995) ("If the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning.").

4

We agree.  By its terms, Article III reserves to management the right to subcontract work.  Indeed, the arbitrator himself recognized this, noting that Article III by its literal terms allows Rock-Tenn to subcontract without explicit limitation.  Nonetheless, the arbitrator pointed to the commentary of other arbitrators to justify his decision to depart from the clear language of the CBA.  As we have noted in the past, "[a]rbitral action contrary to express contractual provisions will not be respected."[8]  Given that the language of the CBA is clear and express, the arbitrator was without authority to ignore its terms to pursue his "own brand of industrial justice."[9]

This conclusion is reinforced by the CBA's arbitration provisions.  Article XV, Section 5 of the CBA specifies that

> [t]he jurisdiction and authority of the impartial arbiter and his opinion and award, shall be confined to the interpretation of the provision or provisions of this Agreement at issue between the Company and the Union. The impartial arbiter shall have no authority to add to, detract from, alter, amend, or modify any provision of this Agreement or impose on any party hereto a limitation or obligation not explicitly provided for in this Agreement.

The arbitrator, however, violated this instruction by imposing on Rock-Tenn a clear and distinct limitation on its ability to subcontract:  the arbitrator ordered Rock-Tenn not simply to use

---

[8]  Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, 889 F.2d 599, 604 (5th Cir. 1989).

[9]  Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).

5

company drivers for some long-haul routes, but to use them to the maximum extent allowed by Department of Transportation regulations. In so ruling, the arbitrator wrote into the CBA a new provision limiting the ability of the company to subcontract its trucking routes or to vary the extent to which it relies on subcontractors for shipping purposes. The CBA nowhere imposes such a limitation, and indeed Rock-Tenn's past practices — relying on subcontractors to fulfill anywhere from 66 percent to 90 percent of the shipping needs — indicate that no such obligation has ever been contemplated. The arbitrator exceeded the authority delegated to him under the CBA by imposing a limitation on Rock-Tenn's subcontracting ability.[10]

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

[10]    A different case would undoubtedly be presented if, as a result of subcontracting, the company had laid off workers, but we do not speculate on it here.