**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0155n.06

**No. 12-3845**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Feb 12, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| HUMILITY OF MARY HEALTH PARTNERS, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| TEAMSTERS LOCAL UNION NO. 377, | ) NORTHERN DISTRICT OF OHIO |
| | ) |
| Defendant-Appellee. | ) |

Before:  MOORE, SUTTON and DONALD, Circuit Judges.

SUTTON, Circuit Judge.  Humility of Mary Health Partners, a consortium of three Ohio hospitals, fired Jody Donoghue for excessive absences.  Claiming that the Family and Medical Leave Act excused each leave, Donoghue filed a grievance with her union, and the matter went to arbitration.  After concluding that Donoghue had been fired without just cause, the arbitrator ordered the Health Center to reinstate her.  The district court declined to disturb the arbitrator's decision. We affirm.

I.

Jody Donoghue is a surgical technician, who suffers from Crohn's disease and rheumatoid arthritis.  Between 2003 and 2009, Donoghue filed eight requests for leave under the FMLA, in each instance invoking her illnesses.  The Health Center granted each request.

In July 2009, Donoghue's supervisor asked her to consider a different position, one that might accommodate her condition more readily. Donoghue declined. In doing so, she submitted a note that read, "Not necessary to use Intermittent FMLA while undergoing Humira therapy," which the Health Center took to mean she was finished asking for leave.

The following year, Donoghue requested FMLA leave again. One of her supervisors, confused by the request in light of the July note, asked the Health Center's medical director, Dr. Jung Kim, to review the request. After unsuccessfully attempting to contact Donoghue's personal physician, Kim recommended that the Health Center order an independent medical analysis. *See* 29 C.F.R. § 825.307(b). The doctor assigned this task conducted an examination of the paper record (but did not examine Donoghue) and concluded that Donoghue was not eligible for FMLA leave. A second independent doctor came to the same conclusion, again without examining Donoghue. *See id.* § 825.307(c).

Based on these findings, the Health Center fired Donoghue for excessive absenteeism. Her union, Teamsters Local No. 377, filed a grievance, arguing that Donoghue had been fired without just cause in violation of the collective bargaining agreement.

The arbitrator considered the Health Center's leave-of-absence policy and the FMLA regulations, *see* R.6-3 at 24 (explaining that the FMLA regulations "shall prevail" any time "expansion, clarification, or interpretation" of the hospitals' policies is required), and concluded that the Health Center lacked just cause for firing Donoghue. According to the arbitrator, the doctors

whom Kim consulted lacked sufficient medical information to evaluate Donoghue and, more to the point, never should have been consulted in the first place. The arbitrator ordered that Donoghue be reinstated and awarded her back pay.

The Health Center filed this lawsuit challenging the arbitrator's decision. The district court granted summary judgment to the union.

II.

Final arbitration decisions receive extraordinary deference under the Federal Arbitration Act. Otherwise, the essential point of arbitration—an inexpensive, speedy alternative to litigation—would become a fiction. Unless the arbitrator "act[ed] outside his authority by resolving a dispute not committed to arbitration," engaged in fraud, maintained a conflict of interest or "otherwise act[ed] dishonestly," or failed to "arguably construe[] or apply[] the contract," we must reject any request for judicial intervention, even in the face of "serious, improvident or silly errors." *Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc) (internal quotation marks omitted); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Trying to shoehorn itself into one of these grounds for review, the Health Center argues that the arbitrator did not "arguably construe[]" the CBA. That is not an easy theory of relief. To meet it, the award would need to be "so untethered to the terms of the agreement . . . that it would cast

doubt on whether the arbitrator indeed was engaged in interpretation." *Mich. Family Res.*, 475 F.3d at 753. Only the "most egregious awards" will cross this threshold. *Id.*

This award falls short of the line. The arbitrator opened his opinion by mentioning the part of the CBA he was charged with construing—Article 7—which says that "The Health Center shall not discipline or discharge any employee without just cause." R. 1-1 at 1. The arbitrator proceeded to offer two reasons the Health Center lacked just cause, both grounded in the FMLA regulations that the CBA, in conjunction with the Health Center's formal leave-of-absence policy, expressly incorporates. *See* R. 9-3 at 37 (charging arbitrators with "apply[ing] the Health Center's policies"); R. 6-3 at 24 (Health Center's leave-of-absence policy, which states that FMLA regulations "shall prevail" whenever "expansion, clarification, or interpretation of this policy may be required").

Not only did the arbitrator mention the relevant terms implicated by this dispute, but he also applied them to this dispute. He explained that the two independent evaluations the Health Center ordered were based on incomplete evidence because Kim failed to notify either doctor of Donoghue's six-year-old Crohn's disease and rheumatoid arthritis diagnoses. *See* 29 C.F.R. § 825.307(b)(1), (c) (suggesting that doctors providing second or third opinions will require "all relevant medical information" to "render a sufficient and complete" evaluation). The arbitrator thus rejected the two medical opinions as justifications for denying the leave requests.

More importantly, he found that the Health Center had no right to order independent medical evaluations in the first place. Citing 29 C.F.R. § 825.307(b)–(c), the arbitrator explained that only

employers "who ha[ve] reason to doubt the validity of a medical certification" may request second or third opinions. Having accepted Donoghue's diagnosis for six years, the arbitrator explained, the Health Center had "no evidentiary basis" suddenly to become skeptical (or worse) about Donoghue's request. R. 1-1 at 13.

It matters not whether we would have construed the relevant regulations and terms of the CBA the same way. That is not what the parties bargained for when they contracted to hire an independent arbitrator to resolve their disputes. All that matters is that the arbitrator did what they engaged him to do—construe the relevant terms of the CBA and the FMLA regulations and apply them to this dispute. *See Mich. Family Res.*, 475 F.3d at 753.

The Health Center separately argues that the arbitrator resolved a dispute not committed to arbitration. Not true. The parties asked the arbitrator to determine whether the Health Center had just cause for firing Donoghue, and that is the dispute the arbitrator resolved. Fighting this conclusion, the Health Center invokes 29 U.S.C. § 2613(d)(2), which provides, "The opinion of the third health care provider . . . shall be considered to be final and shall be binding on the employer and the employee." According to the Health Center, this provision shows that the arbitrator had to follow the independent medical evaluations. But this argument misses the point of the arbitrator's analysis. If, as the arbitrator concluded was true, the employer never should have sought a second and third medical opinion in the first place (in view of the failure to account for Donoghue's documented illnesses and prior unopposed leaves), it would not make sense to reject an employee's leave request based on the binding nature of a third opinion. To hold otherwise would anoint the

third doctor—not the arbitrator—as the final arbiter of all FMLA decisions, in contravention of the

parties' contract.

III.

For these reasons, we affirm.