# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1943

_____

PSC Custom, LP, doing business as Polar Tank Trailers

*Plaintiff - Appellant*

v.

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied
Industrial and Service Workers International Union, Local No. 11-770

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: February 13, 2014
Filed: June 26, 2014

_____

Before RILEY, Chief Judge, LOKEN and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

PSC Custom, LP, doing business as Polar Tank Trailers ("Polar Tank"), manufactures tank trailers at its Springfield, Missouri facility. At the time in question, employees were governed by a Collective Bargaining Agreement ("CBA") between Polar Tank and United Steelworkers Local No. 11-770 (the "Union"). In June 2011, Polar Tank discharged maintenance technician Bonita Symons for failing

to safely complete repair of an overhead crane. The Union grieved the discharge, and the unresolved grievance was submitted to arbitration. The arbitrator partially upheld the grievance, reducing Symons's discipline to a thirty-day unpaid suspension. Polar Tank sued to vacate the arbitration award. The Union counterclaimed to enforce it. The district court[1] granted summary judgment enforcing the award. Polar Tank appeals, arguing the arbitrator's ruling was contrary to unambiguous provisions of the CBA that mandated discharge and is therefore unenforceable. The arbitrator's findings of fact are not at issue. Reviewing the district court's decision *de novo* and the arbitrator's award under the deferential standard of review mandated by the Supreme Court, we affirm.

## I.

Polar Tank's facility uses a ceiling-based crane system that runs the length of the production area. The cranes are mounted on twin rails, more than twenty feet above the floor. A set of gears are used in moving cranes along each rail. Both sets of gears must be in good working order or the crane will not move smoothly along the rails. On June 10, 2011, the manufacturing engineering manager learned that one crane was not running smoothly and instructed Symons to investigate and repair the problem, using a "scissors lift" to access the gears. Near the end of her shift, Symons reported that she had repaired the north-rail side of the crane by installing a new gear, because the old gear had dislodged entirely, and that she had checked the south-rail side of the crane and found it tight and in good working condition. Symons also told Keith Fowler, a maintenance technician on the next shift, that she had not found the lost north-rail gear, a serious safety issue because a lost gear could fall from the rail and injure someone or, worse yet, cause the crane to derail. Fowler shut down the

---

[1]The Honorable Matt J. Whitworth, United States Magistrate Judge for the Western District of Missouri, presiding with consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

crane to look for the gear. Technician John Brannon went up in the scissors lift and quickly found the lost gear in plain sight on the rail frame less than twenty feet from where Symons had performed the north-side repair. Brannon also checked the south-rail side and found the gear "finger loose." The Allen key sockets were packed with grease, suggesting that Symons had not accessed the gear to check if it was loose.

After interviewing Symons and those involved in the incident (along with the Union's president), Polar Tank's Human Relations Manager, Larry LaForge, discharged Symons on June 21 based on the crane repair incident. LaForge's Discipline Report listed as the reasons for discharge:

1. Clear failure [to] properly do an inspection that could have resulted in serious, possibly fatal, accident.

2. Clear disregard for doing the job. By not locating the loose gear lying on the track a serious accident could have happened if it would have been thrown off, or the crane derailed.

3. Passive attitude about avoiding assignments by any means available. Wasting time, not asking for direction.

Article 21 of the CBA provided: "No employee shall be discharged, demoted, or otherwise disciplined without good and sufficient cause." "Should there be any dispute between the Company and the Union concerning the existence of good and sufficient cause for discharge . . . such dispute shall be adjusted in accordance with the Grievance and Arbitration provisions." The Union grieved Symons's discharge under the grievance and arbitration provisions in Article 6 of the CBA. When the grievance could not be resolved, the parties submitted the dispute to arbitration. As is typical, Article 6 provided that arbitration awards are "final and binding on the Company, the Union and the employee(s)," and it limited the arbitrator's authority by prohibiting him from adding to, disregarding, or altering the terms of the CBA. The

parties submitted the following issues to the arbitrator: "1. Did the Company have good and sufficient cause or just cause to discharge [Symons] on June 21, 2011? 2. If not, what shall the remedy be?"

At the lengthy arbitration hearing, LaForge explained his discharge decision, testifying that Symons's misconduct in failing to properly repair the crane violated five standards of employee behavior enumerated in Part B of the Standards of Conduct Polar Tank had adopted and publicized prior to the effective date of the CBA -- insubordination, careless or poor workmanship, continued unsatisfactory performance of work duties, violation of safety rules, and providing false information to the company. Part B provides that violation of its standards "is considered grievous and will result in immediate termination." On cross examination, LaForge admitted that he did not refer to these violations in the termination "paperwork."

The arbitrator issued a written decision upholding the grievance in part. Citing due process concerns, the arbitrator limited his consideration of just cause to the grounds for discipline stated at the time Symons was disciplined, which did not include a reference to the Standards of Conduct. The arbitrator accepted Polar Tank's version of the facts underlying the crane repair incident and ruled that Symons had "engage[d] in negligence involving safety issues [that put] her Company job and potentially her fellow employees in serious jeopardy." However, the arbitrator concluded, Symons's conduct did not rise to the level of insubordination because it amounted to simple negligence rather than "willful or deliberate defiance of supervisory authority." In the arbitrator's view, "a disciplinary suspension for thirty work days . . . constitutes a legitimate balance between the importance of proper performance of those duties and the . . . non-showing of insubordination involved here." Accordingly, Polar Tank did not have just cause to discharge Symons. The award ordered her reinstated with back pay "minus pay for the thirty work day disciplinary suspension ordered here." This lawsuit followed.

## II.

Labor arbitration awards are entitled to substantial but not unlimited judicial deference. Although an arbitrator "may not ignore the plain language of the contract" or impose his own "notions of industrial justice," we are bound to enforce an award if the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); see Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). As has often been said, a labor arbitration award is legitimate "'so long as it draws its essence from the collective bargaining agreement.'" Boehringer Ingelheim Vetmedica, Inc. v. United Food & Commercial Workers, Dist. Union Local Two, 739 F.3d 1136, 1140 (8th Cir. 2014), quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960). Applying this standard, the district court concluded that the award at issue drew its essence from the CBA and must be enforced. We agree.

Polar Tank argues that the district court erred, and the arbitration award may not be enforced, because the arbitrator disregarded unambiguous provisions of the CBA and therefore the award reflects "the arbitrator's own notions of industrial justice." The principle is sound, but it is rarely breached by experienced labor arbitrators. (Here, Article 6 of the CBA required the parties to obtain a list of seven qualified arbitrators from the Federal Mediation and Conciliation Service. The arbitrator selected by the parties, Ronald Hoh, has been an arbitrator since 1980 and has multiple professional affiliations.)

Polar Tank argues the arbitrator disregarded two provisions of the CBA that unambiguously mandated that Symons be discharged for the misconduct the arbitrator found she had committed. First, Article 29 of the CBA declared that "[a]ll rules of the Company now in force shall be observed by all employees." The arbitrator failed to obey Article 29, Polar Tank asserts, because it prescribed the disciplinary penalties

for five enumerated violations, including, as relevant here, "Insubordination such as refusal to work on the job assigned . . . (penalty-discharge)." This contention is contrary to controlling Supreme Court decisions. The arbitrator did not ignore the "insubordination" mandate in Article 29. He carefully considered Symons's poor performance and concluded that it constituted negligence but not the type of "insubordination" for which Article 29 mandated discharge. We are bound to enforce that decision "arguably construing or applying" Article 29 under Misco, Garvey, and other Supreme Court cases. An arbitrator "may not ignore the plain language of the contract; but . . . a court should not reject an award on the ground that the arbitrator misread the contract." Misco, 484 U.S. at 38. We add, though it is not necessary to our decision, that the need for this type of analysis in a just cause proceeding is hardly surprising given the ambiguity inherent in the term "insubordination."[2]

Second, Polar Tank argues that the arbitrator improperly ignored LaForge's testimony that Symons violated five behavior standards for which discharge was mandated by Part B of Polar Tank's Standards of Conduct. Polar Tank contends the arbitrator was wrong to disregard these Standards on the ground that they "were

---

[2]Polar Tank relies on two prior Eighth Circuit decisions we conclude are distinguishable. In St. Louis Theatrical Co. v. St. Louis Theatrical Bhd. Local 6, the grievant violated a "No Strikes - No Lock Outs" CBA provision that declared: "Any employee violating this provision may be disciplined or discharged and shall have no recourse to any other provisions of this Agreement except as to the fact of participation." Because of this limitation, we concluded that "the arbitrator has no authority to evaluate the propriety of the Company's discipline." 715 F.2d 405, 408 (8th Cir. 1983). Article 29 of this CBA had no comparable limitation. In Northern States Power Co. v. I.B.E.W., Local 160, we vacated an award because the arbitrator's finding that the company had "'demonstrated justification' for its decision to terminate" was a finding of "just cause" that precluded the arbitrator from ordering a different remedy. 711 F.3d 900, 903 (8th Cir. 2013). Here, the arbitrator found that Symons's conduct was not insubordination that was governed by Article 29, proceeded to determine whether there was nonetheless just cause to discharge Symons, and explicitly found no just cause.

-6-

implemented unilaterally by the Company without agreement of the Union." The Management Rights clause of the CBA, to which the Union agreed after the Standards were adopted, expressly gave Polar Tank the right to "make reasonable rules and regulations" and to suspend or discharge employees "for violation of such rules or other proper and just cause." This contention has two fatal flaws. First, the reason the arbitrator gave for disregarding the Standards of Conduct was that "none of them was included or cited in grievant's termination letter or in any other notification to the grievant." Polar Tank asserts this statement was "contrary to the Record," but it was based on the uncontroverted testimony of decision-maker LaForge. Polar Tank does not argue the arbitrator's "due process" ruling was error that precludes enforcing the award, and rightly so. Even if we disagreed with the arbitrator's notion of due process, "arbitrators have long been applying notions of 'industrial due process' to 'just cause' discharge cases." Chauffeurs Local Union No. 878 v. Coca-Cola Bottling Co., 613 F.2d 716, 719 (8th Cir.), cert. denied, 446 U.S. 988 (1980); see Misco, 484 U.S. at 39-40 & n.8.

Second, and more importantly, Polar Tank's reliance on the Management Rights clause is contrary to controlling Eighth Circuit precedent that "differentiates between explicit contractual language and rules or policies promulgated under a general management rights clause." Boehringer, 739 F.3d at 1141, citing Trailmobile Trailer LLC v. Int'l Union of Elec. Workers, 223 F.3d 744, 748 (8th Cir. 2000). "Only when the union has unambiguously agreed to an exception to the just cause limitation, either in the CBA or in an agreement resolving a particular disciplinary situation, will the arbitrator be precluded from conducting the collectively bargained just cause analysis." Id. Thus, even though the CBA acknowledged Polar Tank's right to adopt work rules, and the employees' duty to observe those rules, "that does not include the right to renege on the collectively bargained agreement that the employer will only discharge an employee 'for [good and sufficient] cause.'" Id. Here, when Polar Tank submitted the issue of just cause to the arbitrator, "[i]t was for the arbitrator to harmonize any discordant provisions within the contract relating to

the discretionary authority granted management and the just-cause requirements limiting that authority." Trailmobile, 223 F.3d at 747. The arbitrator's resolution of that often-difficult issue is what the parties agreed to in the CBA and therefore drew its essence from the CBA.

For the foregoing reasons, the judgment of the district court enforcing the arbitration award is affirmed.

_____