**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3697
_____

D.A. NOLT, INC.,
                                        Appellant

v.

LOCAL UNION NO. 30 UNITED UNION OF ROOFERS,
WATERPROOFERS AND ALLIED WORKERS;
ROOFERS LOCAL NO. 30 COMBINED HEALTH AND WELFARE FUND;
ROOFERS LOCAL NO. 30 COMBINED PENSION FUND;
ROOFERS LOCAL NO. 30 COMBINED VACATION FUND;
ROOFERS LOCAL NO. 30 COMBINED ANNUITY FUND;
ROOFERS LOCAL NO. 30 POLITICAL ACTION AND EDUCATION FUND;
ROOFING CONTRACTORS ASSOCIATION INDUSTRY FUND;
ROOFERS LOCAL NO. 30 APPRENTICESHIP FUND;
ROOFERS LOCAL NO. 30 HOME ASSOCIATION FUND
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 2-12-cv-05810)
District Judge:  Honorable Anita B. Brody
_____

Submitted Under Third Circuit LAR 34.1(a)
July 15, 2016
_____

Before: FUENTES, SHWARTZ and BARRY, Circuit Judges

(Opinion Filed: September 23, 2016)

---

## OPINION[*]

---

BARRY, <u>Circuit Judge</u>

D.A. Nolt, Inc. (hereinafter, "Nolt"), a roofing contractor, appeals the District Court's order granting summary judgment in favor of Local Union No. 30 and related entities (hereinafter, "the Union"), on its challenge to an arbitration award in favor of the Union. Nolt argues that the Court should have vacated the arbitration award and granted judgment in its favor because the arbitrator lacked jurisdiction over the parties' dispute, or, in the alternative, because the award was in manifest disregard of the law and violative of public policy. Because the Court correctly determined that the arbitrator acted within the scope of his authority in construing the parties' agreement and that Nolt failed to show that the arbitrator's award disregarded the law or violated public policy, we will affirm.

### I.

Nolt was the general contractor for two construction projects in Egg Harbor Township, New Jersey. The projects were governed by a Project Labor Agreement ("PLA") executed by the South Jersey Building and Construction Trades Council and the

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Greater Egg Harbor Regional High School District; Nolt became a signatory to the PLA in connection with its work on these projects. The Union, as a member of the Council, was also a signatory to the PLA.

The PLA required contractors to hire union employees, but it permitted the hiring of non-union employees under certain circumstances. Nolt used both union and non-union employees for work on the projects, and the parties agree that Nolt's use of non-union employees did not violate the PLA. With respect to benefit contributions, the PLA provided that:

> The Contractors agree to pay contributions on behalf of all employees covered by this Agreement to the established employee benefit funds in the amounts designated in the appropriate collective bargaining agreement . . . .

(App. 195.) It also provided, in Article 11, that "[i]n the event of any delinquency a meeting will be held immediately . . . [a] satisfactory fringe benefit payment arrangement shall be facilitated at this meeting." (Id.)

Article 9 of the PLA set forth a "Grievance & Arbitration Procedure," which outlined an "exclusive procedure" for the resolution of "[a]ny question, dispute or claim arising out of, or involving the interpretation or any application of this Agreement." (App. 182.) The procedure required, for example, that the parties meet and confer with respect to any dispute, and, if the grievance could not be resolved, the grieving party was required to serve written copies of the grievance within a specified period of time. Article 9 further stated that "[f]ailure of the grieving party to adhere to the time limits set

3

forth in this Article shall render the grievance null and void." (App. 184.)

The Union interpreted the employee benefits contribution provision of the PLA to require Nolt to contribute to the Union employee benefit funds for all employees working on the project, including non-union employees. It also contended that the PLA required Nolt to pay working assessments to the Union on behalf of non-union employees. Nolt disputed this, arguing that it did not owe such contributions on behalf of non-union employees and that it was not required to pay the working assessments. The parties being unable to resolve their disagreement, the Union submitted a demand for arbitration, and Nolt filed the present action, seeking a declaratory judgment and an injunction preventing the dispute from proceeding to arbitration.

In February 2013, the District Court denied Nolt's motion to enjoin arbitration and stayed the case pending its completion. In September 2014, following two days of hearings, the arbitrator issued an award in favor of the Union. While Nolt had argued that the Union's arbitration demand was "null and void" because the Union had failed to comply with the procedural requirements of Article 9, the arbitrator determined that the dispute was arbitrable because the PLA provided a different process for the resolution of a delinquency for contributions to an employee benefit fund, in Article 11. The arbitrator went on to hold that the plain language requiring contributions on behalf of "all employees covered" by the PLA required Nolt to make contributions on behalf of non-union employees. He stated: "This Arbitrator must hold that where clear and

4

unambiguous contract language requires an employer to make contributions to an established employee benefit fund on behalf of all employees covered by the collective bargaining agreement, the contractual obligation controls." (App. 331.) The arbitrator ordered Nolt to pay $492,000 to the Union benefit funds. He also ordered Nolt to pay working assessment fees for the non-union employees.

The District Court lifted the stay, and the parties filed cross-motions for summary judgment. The Union sought to uphold the arbitrator's award, and Nolt sought to vacate the award on grounds that the arbitrator lacked jurisdiction and that the award resulted in manifest disregard for the law and violation of New Jersey wage laws and public policy. Nolt argued that the Prevailing Wage Act, N.J. Stat. Ann. 34:11-56.25, et seq., required Nolt to pay its employees a "prevailing wage" that included both a base wage and a benefits component, and that requiring Nolt to pay the benefits component of the wage to the Union benefit funds would force Nolt to withhold benefits from its non-union-employees in violation of the statute.

The District Court granted the Union's motion, and denied Nolt's motion in relevant part.[1] The Court concluded that the arbitrator's determination that the grievance was not "null and void" was within his "arbitral jurisdiction," and entitled to deference, as it was based on the arbitrator's interpretation of the agreement. (App. 14.) The Court

---

[1] The Court granted Nolt's motion requesting a modification of the arbitration award, based on the parties' stipulation agreeing that the arbitrator had calculated the relevant hours incorrectly. This resulted in a judgment in the amount of $374,626.12.

5

also rejected Nolt's arguments that the arbitration award was illegal or violative of public policy. It accepted the Union's argument that Nolt could comply with state wage laws by "paying twice," that is, paying "both the benefits contributions it owes to the union benefit funds and the statutorily set benefits it owes to its non-union employees." (App. 16.) Finally, the Court determined that Nolt had waived its claim with respect to the working assessments because it failed to present any argument to support that claim.

On appeal, Nolt renews the arguments it made before the arbitrator and the District Court. For essentially the same reasons cited by the District Court, we will affirm.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review of the district court's confirmation of a labor arbitration award and apply the same standard the district court should have applied." Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chemical & Energy Workers Int'l Union Loc. No. 2-991, 385 F.3d 809, 815 (3d Cir. 2004). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We have held that courts "play a very limited role" in reviewing arbitration awards. Citgo Asphalt, 385 F.3d at 815; see United Transp. Union Loc. 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995) ("District Courts have very little

6

authority to upset arbitrators' awards."). "[C]ourts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987). We will uphold an award "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice.'" Id. (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

Although our ability to review arbitration awards is limited, we may overturn an award under certain circumstances, including when an arbitrator "acted in manifest disregard of the law," see United Transp., 51 F.3d at 380, or where an award "violates a 'well-defined and dominant' public policy, which we must 'ascertain[] by reference to the laws and legal precedents and not from general considerations of supposed public interests . . . .'" Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) (quoting W.R. Grace & Co. v. Loc. Union 759, Int'l Union of Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 766 (1983)). Such situations, however, are rare. See Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000).

III.

Nolt argues that the arbitrator lacked jurisdiction over the parties' dispute because the Union's failure to comply with the procedural requirements of Article 9 rendered the

grievance "null and void." We have held, however, that while questions of "substantive" arbitrability—e.g., the question of whether a particular dispute is covered by the parties' agreement to arbitrate—may be resolved by courts, questions of "procedural arbitrability"—e.g., whether the appropriate grievance procedures were followed—are left to the arbitrator. Bell Atlantic- Pa., Inc. v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000, 164 F.3d 197, 200-01 (3d Cir. 1999). In other words, "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964); see Bell Atlantic, 164 F.3d at 201. As the Supreme Court has recognized, this is appropriate because "[d]oubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration." John Wiley & Sons, Inc., 376 U.S. at 557; see also Whittle v. Loc. 641, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 56 F.3d 487, 490 n.2 (3d Cir. 1995) ("Timeliness is a procedural issue, and in an arbitration proceeding, procedural issues are for the arbitrator to decide.").

Here, the parties agreed to arbitrate "[a]ny question, dispute or claim arising out of, or involving the interpretation or any application of [the PLA]." (App. 182.) The

District Court correctly determined that Nolt's procedural claim that the Union's grievance was "null and void" due to its failure to comply with the formal procedural requirements of Article 9, was within the scope of the parties' agreement to arbitrate, and that the arbitrator had jurisdiction, in the first instance, to resolve this question of procedural arbitrability. Even if we or the District Court might have interpreted the PLA differently, "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation is different from his." Akers Nat'l Roll Co. v. United Steel, Paper & Forestry, Rubber, Mf'g, Energy, Allied Indus. & Serv. Workers Int'l Union, 712 F.3d 155, 161 (3d Cir. 2013) (quoting United Steelworkers, 363 U.S. at 599). Because the arbitrator acted within the scope of his authority in construing the contract, the Court correctly deferred to the arbitrator's determination with respect to this claim.

IV.

Nolt also contends that the District Court erred in refusing to vacate the arbitration award as in manifest disregard of New Jersey law and violation of public policy. Nolt fails to identify with specificity how the arbitrator's interpretation of the PLA disregarded the law, however, and it fails to identify a "well-defined and dominant" public policy that was contravened by the arbitrator's award. At bottom, Nolt argues that the arbitrator's interpretation of the PLA and resulting award was unfair, penalizing employers for using

9

non-union employees even in the absence of a breach of the PLA, and granting the Union an undeserved windfall.[2] Nolt contends that such unfairness is contrary to the spirit of the Prevailing Wage Act and the Project Labor Agreement Act, N.J. Stat. Ann. 52:38-1, et seq., which sought to promote fairness and create a level playing field for both union and non-union-affiliated contractors and workers.

The Supreme Court has observed that in determining whether an award violates public policy, the analysis turns on whether the arbitrator's award "created any explicit conflict with other 'laws and legal precedents' rather than an assessment of 'general considerations of supposed public interests.'" Misco, Inc., 484 U.S. at 43 (quoting W.R. Grace, 461 U.S. at 766). Thus, as we have held, "a formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective bargaining agreement." United Transp., 51 F.3d at 381-82 (quoting Misco, Inc., 484 U.S. at 44). Nolt has failed to demonstrate that requiring an employer to make benefit contributions on behalf of all employees, even employees that may not become eligible to collect benefits, is in conflict with a "well-defined and dominant" public

[2] Nolt argues that the arbitrator's interpretation resulted in a "windfall" to the Union because the majority of its non-union employees will be ineligible to collect benefits under the relevant plans. Acknowledging this argument, the District Court held that "[e]ven if Local 30 will receive contributions for employees that it will never cover, Nolt has failed to demonstrate how this violates the law." (App. 17.) The arbitrator also acknowledged this argument, noting that there were threshold qualifications for all employees, including Union employees, under the Union benefit plans, such that even Union members would not necessarily receive benefits under the plans.

policy, rather than merely contrary to a general interest in fairness and equal treatment for union and non-union employers.

While Nolt persuasively argues that it paid an unfair price for hiring non-union workers in ways explicitly contemplated by the PLA, it acknowledges that the arbitrator's interpretation was based on the agreement's plain language, which required contributions on behalf of "all employees covered by this Agreement." Because the arbitrator was "construing a contract and acting within the scope of his authority," we may not overturn his decision, even were we to agree with Nolt that the arbitrator committed "serious error" in considering non-union employees to be "covered by this Agreement." See Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 510 (2001).

V.

We will affirm the order of the District Court.[3]

---

[3] Because the District Court correctly concluded that Nolt waived its claim with respect to the working assessments, we need not address it. See DIRECTV Inc. v. Seijas, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal."). We note, however, that, on appeal, Nolt does not dispute that the plain language of the PLA required the payment of working assessments; it argues only that the arbitrator failed to find a basis for arbitral jurisdiction over this aspect of the parties' dispute. Just as with the benefit fund contributions, this is an issue of procedural arbitrability on which we would defer to the arbitrator, if the claim were properly before us.

11