**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0331n.06

**Case No. 19-4241**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, TRANSPORTATION DIVISION, | ) ) ) | |
| | ) | **FILED** |
| Petitioner-Appellee, | ) ) | Jun 08, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| PORT AUTHORITY TRANS-HUDSON CORPORATION, | ) ) ) | |
| | ) | O P I N I O N |
| Respondent-Appellant. | ) | |

BEFORE:    COLE, Chief Judge; McKEAGUE and KETHLEDGE, Circuit Judges.

COLE, Chief Judge.  The Port Authority Trans-Hudson Corporation ("PATH") is party to a collective bargaining agreement ("CBA") with its union employees which requires that grievances brought on behalf of PATH employees be submitted to arbitration.  Here, the union filed a grievance on behalf of PATH tower operator David Shenberger and the dispute proceeded to an arbitrator for resolution.  But when the arbitrator ruled in favor of the union, PATH refused to comply with the award.  The union then turned to the federal courts to enforce the award, and the district court granted the union summary judgment.  We affirm.

I.

Under the CBA, PATH employees are allotted vacation and sick leave benefits in accordance with their seniority, with employees who have been at PATH longer receiving more leave. This case began when Shenberger objected to the computation of his leave benefits.

Shenberger began working for PATH in 1993. After battling an ever-worsening case of pulmonary fibrosis for roughly a decade, he was forced to retire in 2009, at which point he accepted a disability annuity. In 2016, after receiving a lung transplant, Shenberger successfully sought reinstatement with PATH, which hired him as a tower operator in March 2017. Upon his reinstatement, however, PATH calculated Shenberger's leave benefits as if he were a new employee, rather than one who had worked at PATH for 16 years. For Shenberger, this determination made a significant difference. Were he to receive credit for his 16 years of service prior to his retirement, he would be entitled to 29 days of vacation leave, 65 days of full-pay sick leave, and 195 days of half-pay sick leave each year. But when PATH classified him as a new employee, that entitlement dropped to 13 days of vacation leave, 5 days of full-pay sick leave, and 10 days of half-pay sick leave.

Shenberger was represented by his union, the International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division ("SMART-TD"). SMART-TD filed a grievance on Shenberger's behalf, contending that he was entitled to the status of a 16-year employee for purposes of calculating his benefits. PATH took a different view, arguing that the CBA precluded Shenberger from receiving credit for years of employment that were interrupted by his retirement. In accordance with the terms of the CBA, parties brought their dispute to a neutral arbitrator, the Public Law Board No. 7551. ("the Board"). The Board ultimately agreed

with SMART-TD's interpretation of the CBA and issued an award sustaining the claim and directing PATH to make Shenberger whole consistent with the terms of the CBA.

PATH did not comply with the award, so SMART-TD filed a petition in the United States District Court for the Northern District of Ohio seeking to enforce it. PATH then filed a counterclaim seeking to vacate the award. After considering the parties' arguments and a stipulated administrative record, the district court granted summary judgment for SMART-TD. PATH timely appealed.

II.

In a dispute over an arbitration award, we review the district court's decision to grant summary judgment de novo. *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 410 (6th Cir. 2008) (internal citation omitted). Our focus, however, is on the arbitrator's analysis, not the district court's. *Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 898 (6th Cir. 2012) (internal citation omitted). And in reviewing the arbitrator's analysis, we are "exceedingly deferential" to the arbitrator's decision. *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 755 (6th Cir. 2007) (en banc). When a losing party asks us to review an arbitration award issued pursuant to a CBA, our review is "very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam). We focus on questions of "procedural aberration." *Mich. Family*, 475 F.3d at 753 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40, n. 10 (1987)). We resist intervening even when the arbitrator makes "serious, improvident, or even silly errors in resolving the merits of the dispute" so long as the arbitrator was "arguably construing or applying the contract," did not act outside its authority by resolving a dispute not committed to arbitration,

and did not commit fraud or otherwise act dishonestly in issuing the award. *Id.* (internal citations and quotation marks omitted).

Here, PATH does not contend that the claim should not have been arbitrated or that the Board acted dishonestly in any way in resolving the dispute. Rather, it argues that the Board was not arguably construing the terms of the CBA when it issued the award.

Judicial consideration of the merits of an arbitration award is "the rare exception, not the rule," to the point where we "must tolerate serious arbitral errors." *Id.* (internal quotation marks omitted). Our strong tendency not to delve into the merits of an arbitrator's decision, however, has its limits. "[W]e cannot ignore the specter that an arbitration decision could be so ignorant of the contract's plain language as to make implausible any contention that the arbitrator was construing the contract." *Id.* (internal citation and quotation marks omitted). In the inquiry as to whether the arbitrator "arguably construed" the contract, only "the most egregious awards" will be vacated. *Id.* Ultimately, we ask a single question: "did the arbitrator appear to be engaged in interpreting the agreement or agreements before [it]?" *Bhd. of Locomotive Eng'rs and Trainmen*, 700 F.3d at 901 (internal citations and quotation marks omitted). If so, we will enforce the award. *Id.*

## III.

To determine whether this is one of the rare instances where we could disturb an arbitration award for the arbitrator's failure to arguably construe a contract, we start with the relevant terms of the CBA. Regarding the calculation of sick and vacation leave benefits, Article VIII(B)(2) of the CBA provides:

> In determining the vacation allowance to which an employee is entitled, length of service shall be measured from the initial date of uninterrupted employment by PATH or any of its predecessors. For this purpose, sick leave in excess of six (6)

months (unless by reason of on-job injury) and leave of absence in excess of thirty
(30) days shall not be counted.

(R. 14-1, PageID 144.) Article IX(A)(4) of the CBA establishes an identical method for calculating seniority for purposes of determining sick leave. Finally, Article II(A)(9) of the CBA addresses the "seniority rights" of employees who, like Shenberger, retire on a disability annuity before the age of 65. (*Id.*, PageID 134.) It provides that such an employee "shall not have his seniority status and rights terminated[.]" (*Id.*)

The Board considered each of those provisions in determining that Shenberger was entitled to credit for the 16 years that he spent working at PATH before his disability. (R. 14-1, PageID 244–46.) The Board determined that Article II's guarantee that an employee does not lose seniority rights when he retires because of a disability and is subsequently rehired meant that Shenberger was entitled to vacation and sick leave benefits in accordance with his 16 years of service at PATH. It accordingly interpreted the leave computation provisions in Articles VIII and IX of the CBA to mean that Shenberger's uninterrupted period of employment from 1993 until 2009 counted as service time, while the time spent retired on the disability annuity—the interruption in that employment—did not.

PATH ardently disputes this interpretation, contending that the term "uninterrupted employment period" unambiguously excludes time spent by an employee at PATH before that employee retires with a disability. In PATH's view, once Shenberger retired on disability, his period of employment was interrupted and therefore cannot entitle him to greater leave benefits upon being rehired and that the seniority clock started at zero when he was rehired.

That argument closely tracks the argument that PATH made to the Board during the arbitration proceeding, and it is a plausible—if not persuasive—construction of the CBA. But it

is not the only one. The CBA does not contain language providing that the retention of seniority rights upon return from disability does not apply to leave calculations, and it does not expressly limit a period of "uninterrupted employment" to the period between an employee's last interruption and the present. In fact, it does not define the term at all. In short, the terms of the CBA do not foreclose the Board's interpretation. In its role as an arbitrator, the Board relied on provisions within the CBA to ascertain the proper approach to an issue that the agreement does not explicitly address. Put differently, the Board's analysis clearly constitutes an interpretation of the CBA. And, under our precedent, that alone is enough to foreclose us from disturbing the award the Board issued.

We affirm the district court's judgment in favor of SMART-TD.